# CHARLESTON.

### HARTIGAN *et al. v.* HARTIGAN.

Submitted September 10, 1908.   Decided April 20, 1909.

1. CURTESY—*Bar—Divorce from Bed and Board.*

   A decree of divorce from bed and board, with perpetual separation, in the terms provided by section 12, chapter 64 of the Code, does not bar the curtesy of the husband, against whom such decree is pronounced, in lands belonging to the wife at the time of the decree; but upon lands thereafter acquired by her it operates like an absolute divorce, thus, as to such property, barring claim to curtesy. (p. 474.)

2. BARRING RIGHT OF CURTESY.

   *Quaere:* May not the court by virtue of section 11, chapter 64 of the Code, in granting such divorce, bar, by a special order in the decree, the right of curtesy or dower in the existing real estate of the parties, or either of them? (p. 473.)

3. DIVORCE—*Decree—"Interest" of Parties.*

   Within the meaning of the word "interest" there is usually embraced a mere contingent or inchoate interest. (p. 474.)

Error to Circuit Court, Monongalia County.

Action by Elizabeth W. Hartigan and others against James W. Hartigan. Judgment for defendant, and plaintiffs bring error.

*Affirmed.*

LAZZELLE & STEWART, for plaintiffs in error.

GOODWIN & REAY, for defendant in error.

ROBINSON, JUDGE:

In a suit for divorce, pending in the circuit court of Monongalia county, it was decreed "that the plaintiff, Mary V. Hartigan, be divorced from bed and board from her husband,

the said defendant, James W. Hartigan; that the said plaintiff and defendant be perpetually separated; that said plaintiff be hereafter perpetually and fully protected in her person from said defendant and in all her property, and estate now owned by her except as hereinafter provided, and in all her property and estate hereafter acquired by her against any claim, demand or estate of said defendant and free from any marital right or claim of said defendant; that the said defendant be hereafter perpetually and fully protected in all his property and estate now owned by him except as hereinafter provided and in all property and estate hereafter acquired by him against any claim, demand or estate of said plaintiff." That this decree was founded upon the ground of cruelty, and not desertion, is made clear by the opinion upon the affirmance of the decree by this Court. 58 W. Va. 616. Mary V. Hartigan died seized and constructively possessed of real estate. James W. Hartigan was in actual possession of the same as her tenant, under provisions of the divorce decree. He refused to surrender possession to the heirs of Mary V. Hartigan, claiming the right thereto as tenant by the curtesy. The heirs sought to oust him by an action of unlawful detainer, claiming that his curtesy right was terminated by the clause of the divorce decree recited above. The case was heard upon an agreed statement of the facts. The court found in favor of the defendant and rendered judgment for him. The effect of that judgment is that James W. Hartigan's right of curtesy in the real estate was not cut off by the divorce decree. Does the decree sever that right? This is the principal question for our consideration upon the writ of error to the judgment.

At the common law a divorce *a mensa et thoro* had no effect whatever upon curtesy or dower nor indeed upon any of the marital rights of either party touching property. 2 Minor's Inst. (4th ed.) 121. And in Virginia such divorce has no more effect than at the common law, in the absence of any order of court, in the sentence of divorce, to the contrary. 2 Minor's Inst. 122. The same is true in this state. Our statutes on the subject are the same as those of Virginia. The jurisprudence of the two states in this behalf is the same. And in the Virginias a divorce *a mensa et thoro,* with a decree of perpetual separation added, such as is now in question before us, provided

for by statutes precisely the same in the two states, is plainly defined as to its effect on curtesy or dower by Mr. Minor. "Such a decree of perpetual separation," says he, "has no effect upon the marital rights of the parties (nor consequently upon curtesy and dower) as to *existing property;* but upon property *thereafter acquired* it operates like a divorce *a vinculo matrimonii;* thus, as to such property, barring the claim to curtesy or to dower." 2 Inst. 122. Is not this text a construction of our statute law by eminent Virginia authority? He is speaking of the identical section of the law upon which this decree is based. And in the decree the court has followed this statute, doing only that which is provided by the statute, using the same language employed in it. May we not say then that Mr. Minor in fact construes this decree by the text we have quoted? That construction says that this decree does not bar the curtesy which James W. Hartigan claims. The real estate in which he claims such right was owned by Mary V. Hartigan at the time of the divorce decree. It is not property acquired by her thereafter.

It is true that Mr. Minor indicates throughout his dissertations on the subject that in granting a divorce it is competent for the court to make an order barring or affecting curtesy or dower where without such order the decree would not have that effect. 1 Inst. 303; 2 Inst. 118, 119, 138. It would seem that this view is based on that which is sec. 11, ch. 64, of our Code. In granting any kind of divorce, the court is by that section given power to make any order it may deem expedient concerning the estate and maintenance of the parties or either of them. It is insisted that this relates only to alimony. But a thorough review of the origin and growth of this statute, from the first enactment on the subject, throughout the revisals, to the existing law, leads us to favor that which Mr. Minor advisedly recognizes; that is, that the court may, by a special order in the sentence of divorce, cut off or bar curtesy or dower where the decree without such special order would not have that effect. And this is suggested in *Harris* v. *Harris,* 31 Grat. 13. The discretion given, by our sec. 11, ch. 64, to the court as to an order relating to the estate of the parties is there denominated as "a broad and comprehensive one." Certain it is that the language formerly employed in the older statutes and recommended by the revisors for the Code of 1849, in this behalf expressly author-

ized the court to make an order affecting or barring curtesy
and dower. Is not this power still retained by the broad and
comprehensive discretion given to the court by section 11 rela-
tive to the making of any order it may deem expedient as to
the *estate* of the parties or either of them? It seems so.

But we deem it unnecessary to decide the foregoing question,
since in the decree before us there is no such special order of the
court. As we view it, the decree is silent, as is the statute upon
which it is based, in relation to curtesy in the property of the
wife owned at the time of the decree. The decree, following
the statute, expressly bars curtesy as to after-acquired property.
As to after-acquired property the statute makes the decree of
perpetual separation to operate as would a decree *a vinculo mat-
rimonii.* A decree from the bonds of matrimony has the effect
to bar curtesy or dower in existing property, even for superveni-
ent cause. *Porter* v. *Porter,* 27 Grat. 599. As to existing prop-
erty, however, the decree under consideration does only what
section 12 empowers the court to do in making an order of per-
petual separation; that is, it protects the wife in the possession
and control of the property during the separation. That pro-
tection is personal to her; it cannot exist after her death. Then,
it can be of no service to her. The decree is made for her; it is
not intended as a protection to those who come after her. If the
court had power under section 11, or other part of the chapter,
to bar the curtesy right in question, it has not done so. It could
do so only by the use of plain terms. We are not justified in an-
nihilating a sacred property right by strained contstruction, or
in basing an act of such annihilation upon mere implication. As
to existing property of the wife, the decree makes no reference
to the curtesy of the husband therein. That curtesy still exists.
The divorce was simply from bed and board. The bonds of mat-
rimony were not dissolved; they existed until the death of Mary
V. Hartigan. Though the parties were separated by legal de-
cree, they were still man and wife. "No interest of the hus-
band in the wife's lands, either during their joint lives or after
her death, is taken from him by this divorce." 2 Bish. on Mar.
& Div., § 1678. "A decree of divorce *a mensa et thoro,* pro-
nounced against the husband, does not bar him of the right of
curtesy." *Smoot* v. *Lecatt,* 1 Stew. (Ala.) 590. "As a di-
vorce *a mensa et thoro* does not destroy the relation of marriage,

but merely suspends some of the obligations arising out of that relation, it follows that the right, as regards succession to property, is not impaired. \* \* \* \* So a husband is tenant by the curtesy of his wife's lands." *Clark* v. *Clark,* 6 Watts & Serg. (Pa.) 87.

At the common law, unless for causes existing *ab initio,* an absolute divorce could only be obtained by Act of Parliament. A parliamentary divorce, being for a supervenient cause, when a marriage not void *ab initio* had for a time existed with all attendant rights of the relation, did not have the effect to bar those rights unless there was a special provision in the act to that effect. "If an Act of Parliament dissolving the marriage contract do not divest dower except a special clause excluding it be inserted, it is difficult to conceive upon what principle a judicial decree can have that effect in the absence of legislation providing that such shall be its operation." 2 Scribner on Dower, 543.

There is another reason justifying the holding that the husband's curtesy remained in the particular property in question even if it could be held that the effect of the decree was to bar curtesy in all existing property of the wife but that expressly excepted. This decree expressly excepts from its force the property now in litigation. In the clause of the decree we have quoted it will be observed that there are the words "except as hereinafter provided." Now, looking further to the decree to see to what this exception relates, we find that as to the very property now sought to be recovered the court expressly reserved "for future order \* \* \* \* the question of the interests of each of the said parties in the said property." It is argued that this reservation relates to interests other than curtesy. But the language used is sufficient to include such marital interest. Curtesy is an interest—a contingent one it is true and yet an interest, nevertheless. The word "interest" is usually construed as embracing a contingent interest. *Young* v. *Young,* 89 Va. 675; *Godman* v. *Simmons,* 113 Mo. 122; *Madigan* v. *Walsh,* 22 Wis. 501. Whatever may have been the cause for this reservation in the decree, it is there. And by it the court expressly reserved the question of whether or not it would eventually end the husband's contingent curtesy interest in the property. That

interest has not been taken away from James W. Hartigan, as is contended, even if the court had power to do so.

It cannot be seriously contended that in this case it is shown that the husband deserted his wife, and thereby lost, under Code, ch. 65, sec. 16, his right of curtesy in her lands. The record and final decision of the divorce case negative this contention. They are before us, in the agreed facts, and we look to them in this particular.

The judgment will be affirmed.

*Affirmed.*

Note by Brannon, Judge:

I do not differ with Judge Robinson in his statement of law in this case. Code, chapter 64, section 11, empowers a court to make decree, in cases both of divorce from the bond of matrimony and from bed and board as to the property of the parties owned at the date of divorce, and to cut off by its decree right of curtesy and dower. That section, however, does not authorize it to do so in case of decree of perpetual separation as to property acquired after the decree. The Legislature deemed it advisable to give this power in such case, and by section 12 made such decree operate as would a divorce from the bond as to such after acquired property. My doubt in this case is, whether we should not hold the decree in this case, under its broad language, as made under both sections, cutting off curtesy as to both present and after acquired property.