CLARK, C. J., and BROWN, J., dissenting.
This is an action to recover land, tried on the following agreed statement of facts:
1. That this action was instituted in the Superior Court of Randolph County on 16 August, 1916, for the recovery of the land described in a deed hereinafter set forth, and all the defendants were personally served with summons. *Page 634 
2. That prior to 31 July, 1890, Travis Smith and Louisa Smith were legally married, and at that time they were husband and wife.
3. That on 31 July, 1890, B. B. Barnes executed a deed conveying the land in controversy to the said Travis Smith and his wife, Louisa Smith, in fee by entireties, which deed was duly registered on 1 August, 1890.
4. That at March Term, 1907, the said Travis Smith obtained judgment of divorce a mensa et thoro from the said Louisa Smith on the ground of abandonment.
5. That said Travis Smith died intestate in the year 1912, and the plaintiffs, who are his sisters, are the only heirs at law.
6. That Louisa Smith survived her husband and died intestate in the year 1916, and the defendants, who are her brothers, are her only heirs at law.
(582) 7. The plaintiffs contend that they are the owners of said land or at least of one-half thereof as tenants in common, and the defendants deny that the plaintiffs own any interest therein, and contend that they are sole seized of said land.
His Honor held that a divorce a mensa et thoro servered the marriage relation and that the plaintiffs were entitled to recover one-half of the land in controversy, and the defendants excepted and appealed.
The idea that husband and wife are one, or, as generally expressed, of the unity of the person, does not have its origin in the common law. It dates from the Garden of Eden, when it was declared, "They shall be one flesh" (Gen., 2:14), and it has been reaffirmed and preserved in the Gospels and the Epistles. "Wherefore they are no more twain, but one flesh" (Matt., 19:5); "They twain shall be one flesh" (Mark, 10:8); "They two shall be one flesh" (Eph., 5:31).
It is on the doctrine of the Unity of Person that estates by entireties, with the right of survivorship, rest. Motley v. Whitemore, 19 N.C. 537;Topping v. Saddler, 50 N.C. 360; Long v. Barnes, 87 N.C. 334; Harrisonv. Ray, 108 N.C. 216; Bruce v. Nicholson, 109 N.C. 204; Gray v. Bailey,117 N.C. 442; Ray v. Long, 132 N.C. 891; McKinnon v. Caulk, 167 N.C. 412.
The Court says, in Motly v. Whitmore, supra, which is approved in the other cases cited: "When lands are conveyed to husband and wife, they have not a joint estate, but they hold by entireties. Being in law but one person, they have each the whole estate as one person; and on the death of either of them the whole estate continues in the survivor," *Page 635 
and in McKinnon v. Caulk, after citing a number of cases: "A perusal of these and other authorities on the subject will disclose that the estate in its essential features and attributes is made dependent on oneness of person of the husband and wife."
Perhaps the fullest and clearest statement is that of the present ChiefJustice in Harrison v. Ray, 108 N.C. 216, written after the adoption of the present Constitution, in which, following Person, J., in Tapping v.Sadler, he advances a step beyond his predecessors and adds a fifth unity to the four common-law unities, that of the unity of the person of husband and wife. He says: "When realty is devised or conveyed to husband and wife, they take by entirety, and upon the death of one the whole belongs to the other by right of survivorship. 2 Bl., 182; Long v.Barnes, 87 N.C. 329; Simonton v. Cornelius, 98 N.C. 433. The act abolishing survivorship in joint tenancies, Act 1784, ch. 204 (The Code, par. 1326), does not apply to such cases. Motley v. Whitemore, (583) 19 N.C. (2 D. and B.), 537; Todd v. Zachary, Busbee's Eq., 286; Woodford v. Highly, 60 N.C. (1 Winston), 237. Indeed, it is held that a conveyance to husband and wife has a fifth unity added to the four common-law unities recognized in joint tenancy, i. e., unity of person. Topping v. Sadler, 5 Jones, 357; Freeman on Co-tenancy and Part., par. 64."
These authorities and others also establish the principle that changes as to the property rights of married women brought about by modern constitutions and statutes have neither destroyed nor altered the nature of the estate by entireties.
Hoke, J., speaking for a unanimous Court, said in the McKinnon case: "It has been held in several well considered decisions of this Court that our Constitution and the later statutes relative to the property and rights of married women have not thus far destroyed or altered the nature of this estate by entireties, a `conveyance to a husband and wife,' Jones v. Smith,149 N.C. 318; West v. R. R., 140 N.C. 620; Bynum v. Wickham, 141 N.C. 95;Bruce v. Nicholson, 109 N.C. 205; Ray v. Long, 132 N.C. 891."
There is some conflict in the authorities from other States as to the effect of the Married Woman's Property Acts on estates by entireties, but the better opinion and weight of authority is in favor of the position adopted by this Court.
The author says in 13 R. C. L., 1101: "The Married Woman's Property Acts have in some cases in this country been given the effect of abolishing the common-law estate by entireties, and under such a construction a conveyance to a husband and wife creates the same estate in the parties as if it had been made before the coverture; that, being invested with the capacity of taking by entireties, the reason of the rule of *Page 636 
the common-law, that they should take by entirety — per tout, not permy — has ceased to exist. This also seems to be the effect given to such statutes in England and Canada. The better opinion of this country, however, is that the operation of these statutes should be limited to the separate property of married women, leaving unaffected and unimpaired the previous law regarding the creation, existence, and essential attributes and consequences of estates by entireties," and there are more than twenty cases cited in support of the text.
Clark, C. J., calls attention in Bynum v. Wicker, 141 N.C. 86 (1906), to the failure of the General Assembly to change the estate by entireties into a cotenancy, and concludes that in the absence of legislative action the estate possesses the same properties as at common law. He says: "This estate by entirety is an anomaly, and it is perhaps an oversight that the Legislature has not changed it into a cotenancy, as has (584) been done in so many States. This not having been done, it still possesses here the same properties and incidents as at common law."
The same learned judge also says in West v. R. R., 140 N.C. 620: "InLong v. Barnes, 87 N.C. 333, it is held that the Constitution, Article X, sec. 6, as to the rights of married woman, did not `destroy or change the properties and incidents belonging to the estates' held by entireties," and adds, after discussing the incidents and properties of the estates: "These are the incidents and properties of an estate by entirety when (as in this State) there has been no change by statute, and upon the above authorities the plaintiff can maintain this action without joining the wife. She is not entitled to sue for this damage nor to share in the recovery. If any change in the incidents and properties of this anomalous estate is desirable, legislation must be had upon it."
If, therefore, the estate by entireties rests and is dependent upon the oneness of the person of husband and wife and not upon property rights, and if the changes in the rights of property of married women have not destroyed or affected the nature of the estate, it follows that no decree can change the estate to a tenancy in common, unless it severs the marriage relation and makes the husband and wife two persons and not one.
Does a decree a mensa et thoro have this effect?
A decree a mensa et thoro does not purport on its face to dissolve the bonds of matrimony, and it is in legal effect simply a decree of separation.
As said in Evans v. Evans, 7 L.R.A., 448 (43 Minn.), the marriage relation is merely suspended, not annulled, and in People v. Cullen, 44 L.R.A., 423 (153 N.Y. 629), the parties still remain husband and wife in the eye of the law, and the authorities are practically unanimous in favor of the principle, as appears from the following note to Boykin *Page 637 v. Bain, 85 Am. Dec., 360: "A divorce from bed and board does not put an end to the marriage ties, or destroy the relation of husband and wife;Capel v. Powell, 17 C. B., N.S., 743; Moore v. Barber, 5 Giff., 43;Barber v. Barber, 21 How., 582; Ellison v. Mayor, 53 Ala. 558; Gee v.Thompson, 11 Ann., 657; Kriger v. Day, 2 Pick., 316; Dean v. Richmond,5 id., 461; Barrere v. Barrere, 4 Johns. Ch., 187; but merely suspends certain of the mutual rights and obligations of the parties: Clarkv. Clark, 6 Watts. and S., 85; Barrere v. Barrere, supra; such a divorce having the effect to destroy the right of cohabitation, and if the parties again live together and become reconciled as husband and wife, the effect of a divorce a mensa et thoro is destroyed, and the marriage relation continued or resumed; Liddell v. Liddell, 22 La. Ann., 9; Gee r.Thompson, 11 id., 657; Hokamp v. Hagaman, 36 Md. 511;Kriger v. Day, 2 Pick., 316; Dean v. Richmond, 5 id., 461; (585)Nathans v. Nathans, 2 Phila., 393; McKarracher v. McKarracher, 3 Yeates, 356; Tiffin v. Tiffin, 2 Binn., 202. In case of divorcea mensa et thoro, the parties cannot marry again, as the relation of husband and wife has not ceased; Barber v. Barber, 21 How., 582;Savoie v. Ignogoso, 7 La. 281; Wait v. Wait, 4 N.Y. 95; and for the same reason such a decree does not remove incapacity to testify on the part of either; Kemp v. Downham, 5 Harr. (Del.) 417."
We are therefore of opinion, as the estate by the entireties rests upon the unity of person, and as this estate is not destroyed or affected by the statutes relating to the property rights of married women, and as a divorcea mensa et thoro does not dissolve marriage, and, therefore, does not destroy the unity of person, that it was error to hold that the plaintiffs were the owners of any part of the land in controversy, and that upon the death of the husband the estate belonged to the wife by right of survivorship and descended to the defendants as her heirs.
We would be glad to "bend out" in this case and decide in favor of the heirs of the husband, as the record shows he obtained a divorce a mensa etthoro from his wife because she had willfully abandoned him, but as the General Assembly after repeated suggestions has refused to change the law, we must declare it as we find it.
Reversed.
NOTE — Petruchio was engaged in the difficult task of taming a shrew (this was in the barbarous time when there were shrews), and he adopted rough measures and intemperate language.
He succeeded where the gentler methods of father and sister had failed, and Shakespeare has him to say in conclusion: *Page 638 
 "He that knows better how to tame a shrew Now let him speak: 'tis charity to show."