[Civil No. 3908. Filed May 16, 1938.]

[79 Pac. (2d) 504.]

BERNABE ROBLES, Appellant, v. ANTONIO PRECIADO, Appellee.

Messrs. Conner & Jones and Messrs. Robles & Dodd, for Appellant.

Mr. O. E. Myrland, Mr. Bryce H. Wilson and Mr. Abbie Y. Holesapple, for Appellee.

LOCKWOOD, J.—Antonio Preciado, hereinafter called plaintiff, brought suit against Bernabe Robles, hereinafter called defendant, for damages for personal injuries which plaintiff alleged he had sustained while working for defendant. The case was tried to a jury, which returned a verdict in favor of plaintiff in the sum of $3,500, and upon which verdict judgment was rendered. After the usual motion for new trial had been overruled, this appeal was taken.

The evidence taken in the strongest manner in behalf of plaintiff, as under our oft-repeated rule we must consider it, shows the following facts: Plaintiff was an illiterate laborer who for some time had, with his family, occupied a house in Tucson owned by defendant. The roof of a portion of the house had been covered with some form of tar paper, which had begun to leak, and defendant instructed plaintiff to repair it with the same type of material. While he was working upon the roof, in the course of making such repairs, he slipped and fell to the ground, breaking his leg and suffering other serious injuries. Defendant paid certain doctor bills and gave plaintiff, from time to time, small sums of money for the maintenance of his family during his illness, and shortly thereafter secured from him the following instrument:

"Know all men by these presents that, in consideration of the sum of five hundred dollars to him, the undersigned, in hand paid by Bernabe Robles, the receipt whereof is hereby acknowledged, I hereby accept the same in full compensation and settlement for, and hereby release and forever discharge said Bernabe Robles and all its agents and employees from, any and all claims, demands and liabilities to me on account of any and all injuries, losses and damages

to my person and or property which have caused, or may at any time arise, by reason of that certain accident which occurred at 558 South Meyer, Tucson, Arizona, on or about the 29th day of August, 1935; the intention hereof being to completely, absolutely and finally release said Bernabe Robles and its employees from all liabilities arising wholly or partially from the cause aforesaid.

"And the undersigned jointly and severally covenant and agree, in consideration of the premises, to protect and save harmless said Bernabe Robles and all its employees from any further loss, damage or expense, by reason of litigation or otherwise, on account of the claims, liabilities and injuries to person or property aforesaid.

" . . .

"[Signed] ANTONIO S. PRECIADO."

Some time thereafter, and within the statutory period, plaintiff brought this action. The complaint, so far as material, reads as follows:

"III. That on or about the 5th day of August, 1935, the Defendant engaged the services of the Plaintiff to assist other employees of the Defendant in the repairing of certain houses owned by the Defendant, and agreed to pay to the Plaintiff, and did pay to the Plaintiff the sum of One Dollar ($1.00) per day for his services.

"IV. That on or about the 29th day of August, 1935, while regularly employed by the Defendant, while the Plaintiff was engaged in repairing a roof on one of the houses belonging to the Defendant, the Plaintiff fell off of said roof of the Defendant's house and suffered a broken right leg, at a point approximately at the hip joint of said right leg. That the Plaintiff was under the care of a physician for approximately one month after said accident, and was confined for more than two weeks in a hospital in Tucson, Arizona.

"V. That as a result of said fall, in addition to receiving the broken leg, as aforesaid, the Plaintiff was rendered sick, sore and lame, and suffered great nervous shock and much physical pain and suffering;

that as a further result of said fall and said broken leg, as aforesaid, the Plaintiff has been rendered thoroughly and permanently injured, and his condition is such that he can no longer engage in a useful and gainful occupation.

"VI. That on the 29th day of August, 1935, although the Defendant had in his employ more than three employees, who were regularly employed by the Defendant in his business, the Plaintiff is informed and believes, and upon such information and belief alleges that said Defendant had not complied with the provisions of section 1422 of the Revised Code of Arizona 1928, and any and all amendments thereto.

"VII. Plaintiff states that by reason of the negligence and carelessness of the Defendant, as above set forth, he has been permanently injured, as aforesaid, and that he has been thereby damaged in the sum of Twenty-five Thousand Dollars ($25,000.00)."

Defendant did not demur to the complaint nor file any motions to make more definite and certain, but alleged that plaintiff's injuries were the result of his own sole negligence, and that defendant was guilty of no negligence whatsoever in the premises, and then set up as an affirmative defense the release above set forth. Plaintiff replied, claiming that the release had been obtained by means of false and fraudulent representations. All of the issues of fact raised by the pleadings were decided by the jury in favor of plaintiff.

The case is of some importance to the state, involving as it does the first interpretation of section 1433, Revised Code of 1928, which has been made by this court, and a proper consideration of the principles involved requires some discussion of the law of Arizona affecting responsibility for personal injuries as between employer and employee.

For many years Arizona was governed by the principles of the common law in cases of this kind. Briefly stated, these principles are as follows: The

employer was liable for injuries received by an employee arising out of and in the due course of his employment only when he was negligent in his conduct towards the employee. He was required to provide a safe place for the employee to work and to use reasonable care in selecting fellow employees, but this liability was greatly modified by the rule that the employee was held to assume the risk of dangerous conditions of his work if he knew or, in the eyes of the law, should have known of such conditions, and could not recover on account of the negligence of his fellow employees unless he showed lack of due care in their selection. Further, if the injury was caused by the combined negligence of the employer and the employee, it was held that the employee's contributory negligence barred him from recovery. As a result of these rules, it was only in rare cases that an employee had any remedy if he were injured in the course of his work, and generally was compelled to bear the burden of his injuries without aid from his employer. This rule, perhaps not without some justification when the average employer had only a few employees and took a personal part in, and supervision over, the work, was seen to be unjust under the changed economic conditions of modern industry, where the employer was generally a corporation with many employees, and the employee had little or no chance to determine whether the conditions under which he was working were safe or not. Eventually these considerations led to the adoption of the new principle, based on modern economic conditions and necessity, that instead of the employee bearing the burden of loss occasioned by injuries incidental to his occupation, the loss due to human wear and tear incidental to an industry must be borne by the industry in the same manner as it bore the loss of inevitable wear and tear of its inanimate machinery. Out of

this new principle grew the employers' liability and workmen's compensation laws now found practically everywhere in those parts of the world which have adopted machine production. Like all changes in law, the new principle had to overcome a strenuous opposition, based on archaic conditions and the legal rules which were the natural result of such conditions.

One of the principal obstacles to the adoption of laws of this kind was the idea, universally prevalent in simpler times, that the employer and the employee dealt with each other on an equal basis at arm's length, and that the state was not interested in their relations except to see that their "liberty of contract" was preserved. It soon became apparent, however, that in modern conditions the employer and employee did not, and could not, deal upon equal terms; that the latter, as a matter of fact, was generally helpless and was compelled to accept such conditions and terms of work as the employer might choose to offer, or else starve. It was finally recognized by all far-sighted economists and statesmen that it would be necessary for the state to modify its previous doctrine of *laissez faire,* if the employees who comprised by far the greater part of the citizenry of the modern state were to be given the protection which modern economic and social theories required. When the first acts of this nature were adopted, the courts, still acting under the influence of the old legal principles, generally denied that the legislatures, or even the people, of the various states had the power to impose any liability on an employer for injuries to his employees, except for his own tort, or to compel either the employer or the employee to accept the terms of compensation provided by the state for accidental injuries. In order to meet this situation, many of the legislatures framed their acts so that they might be accepted or rejected by either the employer or the employee. Arizona, how-

ever, took the position that under the police power this liability might be imposed on the employer against his will, and this principle was finally approved by the court of last resort in the Arizona Employers' Liability Cases, 250 U. S. 400, 39 Sup. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537. The employee, however, was free to accept or reject the law at any time before he finally elected his remedy by filing a suit or settling for his injuries out of court. When the Workmen's Compensation Law was adopted in 1925, Revised Code of 1928, section 1391 et seq., the Constitution was amended (article 18, section 8, as amended in 1925), so that the election must be made before the injury.

As we have stated previously (*Melendez* v. *Johns,* 51 Ariz. 331, 76 Pac. (2d) 1163), the method of providing the funds necessary to pay the compensation allowed under the Workmen's Compensation Act was based upon the principles of insurance, and the employer was required by law to carry insurance to protect his injured employees. This might be done in three manners: (a) By paying a fixed percentage of his pay roll to the State Industrial Commission; (b) by taking out compensation insurance with a private insurance carrier approved by the state; and (c) in cases where the employer was exceptionally strong financially by carrying the insurance itself, with the consent of the Industrial Commission. It was recognized, however, that cases might, and doubtless would, arise when some employers, notwithstanding the mandatory provisions of the law, would fail to provide the insurance which was required, and that the injured employee might be left with no proper security for his compensation. It was undoubtedly to meet this contingency that section 1433, *supra,* was enacted. It reads as follows:

"*Liability of employer failing to comply.* Employers subject to and who fail to comply with the

provisions of section 1422 shall not be entitled to the benefits of this article during the period of noncompliance, but shall be liable in an action under any other law of the state, and in such action, the defendant shall not avail himself of the defenses of assumption of risk, or of contributory negligence, and in all such actions proof of the injury shall constitute *prima facie* evidence of negligence on the part of the employer and the burden shall be upon the employer to show freedom from negligence resulting in such injury. An employee of such employer, or his dependents in case death ensued, may, in lieu of proceeding against his employer by civil action in the courts, file his application with the commission for compensation in accordance with the terms of this article, and the commission shall hear and determine such application for compensation in like manner as in other claims before the commission; and the compensation so determined shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed and determined by the commission. An abstract of the award may be filed in the office of the clerk of the superior court in any county in the state and shall be docketed in the judgment docket thereof, and when so filed and docketed shall be a lien upon the property of the employer situated in the county for a period of eight years from the date of the award; execution may be issued thereon within eight years in the same manner and with like effect as if said award were a judgment of the superior court.''

 It will be seen upon an examination of its provisions that it gives to the injured employee, when his employer has not protected his compensation by insurance, the election of two remedies, (a) he may make application to the Industrial Commission in the same manner as though the employer had complied with the terms of the law, and, when an award is made by the commission, such award becomes a judgment against the employer in the same manner as any other judgment of the courts of the state; (b) if he does

not desire to do this, he may sue the employer in the courts. What is the nature of such suit? The statute says that, if the employee exercises this option, the employer "shall be liable in an action under any other law of the state." It is evident that this section does not create a new right of action, but merely gives the employee the right to sue upon any right of action recognized by the law as existing before the adoption of the Compensation Act of 1925. Upon an examination of our statutes and decisions, it will appear that there were two such actions. The first was under the Employers' Liability Law of 1913. Rev. Code 1928, § 1350 et seq. This law, however, only applied to accidents arising in certain classes of occupations specified by the act, and did not cover a large percentage of the employees of the state. The second was the old common-law action of negligence above referred to which applied generally to all relations of employer and employee, but modified by the remaining language of the section as to be almost unrecognizable. The defenses of assumption of risk and contributory negligence, which so frequently defeated the right of action in former times, were entirely abolished. More than this, while under the common-law action the burden of proof was originally upon the plaintiff to show that the defendant was negligent, under section 1433, *supra,* the legislature, arbitrarily shifted this burden and provided that proof of the injury alone should be *prima facie* evidence of negligence on the part of the employer. There was, in effect, but one defense left. While under the Workmen's Compensation Act the fact that the sole cause of the injury was the negligence of the employee did not prevent his recovering compensation, the employer was still left that defense in an action brought under section 1433, *supra.* Nor did the statute imposing the burden of proof of negli-

gence upon the employer state that it was unnecessary for the employee at least to allege that the injury was due to the negligence of the employer. We think that this omission on the part of the legislature was deliberate and intentional. While the action has been modified by taking away the defenses of assumption of risk and contributory negligence, and while the burden of proof has been shifted, it still remains in its essence an action in which liability is based upon the negligence of the employer, and, unless such negligence exists, there can be no recovery. This is shown by the fact that the act itself expressly says that ''the burden shall be upon the employer to show freedom from negligence resulting in such injury.'' If, therefore, the right of the employer to show that he is free from the negligence which caused the injury is to be a real right, and not merely an apple of Sodom, fair to the sight but falling to ashes when one attempts to taste it, it is but just that he should at least be informed in what respect it is claimed he was negligent. The different possible forms of negligence are innumerable. If the plaintiff may be permitted in his complaint to say, in substance, to a defendant, ''I was injured while in your employ through your negligence. Now guess what kind of negligence it was that injured me and prove that you were not guilty thereof,'' the defense given by the statute is nothing but a snare and a delusion. We are of the opinion that, if the plaintiff exercises his option to sue under section 1433, *supra,* upon the action of negligence as modified by the statute, he must allege in his complaint in what the negligence which he claims caused his injury consists, in the same manner and to the same extent that he was required to do before the statute, so that the defendant may have an opportunity to show either that such negligence did not cause the injury, or that he was not responsible therefor. Upon examining the

complaint in this case, it will be seen that there is not even a basis for speculation as to what negligence plaintiff contends caused his injury. He states merely that, while he was on the roof of the defendant's house repairing it, he fell off and broke his leg. It is true that in the last paragraph of his complaint he alleges that his injury was caused by "the negligence and carelessness of the defendant as above set forth," and it is contended this is sufficient to bring the complaint within the statute. The trouble is that there is no negligence "above set forth."

Plaintiff, in his oral argument, urged that the doctrine of *res ipsa loquitur* should be applied. We think he has misunderstood the nature and effect of this doctrine. In the case of *Sawyer* v. *People's Freight Lines, Inc.*, 42 Ariz. 145, 22 Pac. (2d) 1080, we had this doctrine under consideration, and said (page 149):

" . . . Such cases arise: 'Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. This statement of the rule of *res ipsa loquitur*, based on the expression in an early English case, which has been widely quoted with approval, has been in substance most frequently adopted and applied in subsequent decisions so that the occurrence of an injury under the circumstances therein set forth raises a presumption or permits an inference that the party charged was guilty of negligence.' 45 C. J. 1193, § 768."

The matters alleged in the complaint and the evidence in support thereof utterly fail to bring the case within the rule. It is not apparent what thing caused the injury in the present case, still less whether

it was under the management of the defendant or the fellow employees of the plaintiff, nor that the accident was such as would not occur in the ordinary course of circumstances if proper care was used by the defendant. It appears, therefore, that the complaint did not state a cause of action against the defendant, under section 1433, *supra*.

It is urged by plaintiff that no demurrer was interposed to the complaint, and that under rule IV, subd. 5, of the Uniform Rules of the Superior Courts, this waived the error. It is true that under that rule any defects in a pleading not raised by proper objection thereto are waived, but we think this does not, and cannot, apply to cases where the complaint fails utterly to show that any cause of action exists as against the defendant. Before the rule, the failure of a complaint to state a cause of action could be taken advantage of at any time. *McPherson* v. *Hattich,* 10 Ariz. 104, 85 Pac. 731. In the present case the issue was raised on an objection to the evidence. Had plaintiff desired, he could have asked leave to amend, and it was in the discretion of the trial court to allow such amendment. We think it applies only to defects in a pleading which can be waived, and a failure to state any cause of action does not fall within that category. There is a difference between a defective statement of a good cause of action and the statement of a defective cause of action. In the one case, the complaint shows that a cause of action does exist, even though it is not properly pleaded. In the other case, the complaint fails to show that any cause of action ever existed. The first error is waived under the rule, while the second is not. Since the allegation of some kind of negligence on the part of defendant is necessary to give the court jurisdiction to hear the case and to render judgment thereon, the complaint was fatally defective, and the

judgment must be reversed and the case remanded for a new trial.

We think, however, it is well to refer to two other issues raised by the assignments of error, in order that on another trial of the case they may be properly determined. The first is the alleged release. On its face, it is a complete bar to any action arising out of plaintiff's injury, but he alleges that it was obtained by false and fraudulent representations as to its nature. This of course, if true, is a good defense against a release valid on its face. We have examined the reporter's transcript as to the evidence in regard to the release and think it was sufficient to go to the jury upon the question of whether it was obtained by false and fraudulent representations.

The second is in regard to the instruction as to the measure of damages. An instruction of this nature of course should be given, but this is an error which can be waived, and the record shows it was so waived under rule V, subd. 5, of the Uniform Rules. On a new trial the proper instructions will doubtless be given.

Because of the failure of the complaint to state any cause of action against the defendant, the judgment is reversed and the case remanded for a new trial in accordance with the opinions expressed herein.

McALISTER, C. J., and ROSS, J., concur.