450 P.2d 725

**Mary Toos RODIECK, Appellant,**

**v.**

**George Edward RODIECK, Appellee.**

**No. 2 CA–CIV 550.**

Court of Appeals of Arizona.

Feb. 13, 1969.

Sullivan, Alley & Seefeldt, by John P. Sullivan, Tucson, for appellant.

Clampitt, Videen & Berlat, by William L. Berlat, Tucson, for appellee.

HATHAWAY, Judge.

This is an appeal from a decree of separation from bed and board, A.R.S. § 25–331, raising questions concerning the characterization of the parties' property as separate or community property and the division of that property as provided in the decree. We have raised, sua sponte, however, a question of jurisdiction which we feel is dispositive of the case. Does a superior court, under the law of this state have jurisdiction to dissolve the community in an action for separation from bed and board?

This question has apparently never been raised before in the appellate courts of this state. Therefore, a brief look into the history of this type of action is helpful to a better understanding of the problem.

In Arizona, a dissatisfied wife, such as Mrs. Rodieck in the instant case, has three alternatives to choose from if she wishes to compel support from her husband while living away from him, (1) she may file for separate maintenance, under A.R.S. § 25–341 et seq., or (2) she may file for separation from bed and board, under A.R.S. § 25–331 et seq., or (3) she may ask for a divorce under A.R.S. § 25–311 et seq. Mrs. Rodieck elected to seek separation from bed and board. Our Supreme Court has distinguished "separate maintenance" and "separation from bed and board" in Williams v. Williams, 33 Ariz. 367, 265 P.2d 87, 61 A.L.R. 1264 (1928), where it explained that the latter term is the same as the common law divorce *a mensa et thoro*,[1] which was granted by the ecclesiastical courts of England.

*See* also Gloth v. Gloth, 154 Va. 511, 153 S.E. 879, 71 A.L.R. 700 (1930). It is also called "limited divorce" and "legal separation." Although denominated a "divorce," at common law it was not a divorce action at all, since the marriage union was not dissolved. As stated in *Williams*:

"The status of the parties as married people remained the same, with the exception that the wife was freed from the obligation of living with her husband." 265 P. at 88.

*See* also Darden v. Darden, 246 Ala. 525, 21 So.2d 549 (1945). Under the old common law of England, only Parliament could grant a divorce dissolving the bonds of matrimony. This legislative divorce was called divorce *a vinculo matrimonii*[2] and was the same as an absolute divorce under current terminology.

We look first to our statutes to determine whether authority exists to dissolve the community in this type of action. Even though equitable in nature, Schwartz v. Durham, 52 Ariz. 256, 80 P.2d 453 (1938), divorce actions are statutory, the courts having only those powers specifically conferred by statute. Van Ness v. Superior Court, 69 Ariz. 362, 213 P.2d 899 (1950). *See* also Valley Drive-In Theatre Corp. v. Superior Court, 79 Ariz. 396, 291 P.2d 213 (1955); Cloeter v. Superior Court, 86 Ariz. 400, 347 P.2d 33 (1959).

A.R.S. § 25–333, governing actions for separation from bed and board, provides:

"A. *The proceedings shall be commenced and conducted as actions for absolute divorce,* and the court may award such sum for attorney's fees and alimony during pendency of the action as the circumstances and situation of the parties warrant.

"B. The court may make and enter such judgment for support of the wife and her children by the husband, *or out*

---

1. "Mensa" meaning "table" or "board," and "thoro" meaning "bed" in Latin.

2. "Vinculo" meaning "bond": "from the matrimonial bond."

*of his property or earnings,* as is just and proper, and *may grant such further judgment as the nature and circumstances of the case require,* whether a decree for separation is granted or not.

"C. On joint application of the parties and proof of their reconciliation, the court which granted the judgment of separation may revoke it under such regulations and restrictions as the court prescribes." (Emphasis added)

Subsection A, providing that the "proceedings [in an action for separation from bed and board] shall be commenced and conducted as actions for absolute divorce," was obviously not designed to carry substantive powers from the statutes governing absolute divorce into those on separation from bed and board. Authorization for dissolution of the community, contained in A.R.S. § 25–318, is given only in cases of absolute divorce.[3] We conclude that this sentence of Subsection A was intended to apply only to procedural aspects.

■ Subsection B is likewise devoid of any authorization to determine the property rights of the parties. The fact that the court may provide for alimony or child support by the husband, "out of his property or earnings," does not authorize complete adjudication of property rights, since alimony does not contemplate a property settlement. Norton v. Norton, 101 Ariz. 444, 420 P.2d 578 (1966); Stone v. Stidham, 96 Ariz. 235, 393 P.2d 923 (1964); Lovegrove v. Lovegrove, 128 Va. 449, 104 S.E. 804 (1920); Reynolds v. Reynolds, 68 W.Va. 15, 69 S.E. 381 (1910); Tremper v. Tremper, 39 Cal.App. 62, 177 P. 868 (1918); 24 Am.Jur.2d Divorce & Separation § 610. The latter part of Subsection B, providing that the court "may grant such further judgment as the nature and circumstances of the case require," is an

allowance of discretionary authority to insure that the support provisions will be enforceable. We think the legislature contemplated, by this language, liens on separate property of the husband, awards of property in lieu of alimony, injunctions against alienation of community property, custody of minor children and the like.

■ The foregoing construction of Subsection B is supported by the provision that this discretionary authority may be exercised "whether a decree for separation is granted or not," indicating that the court may grant a decree for separate maintenance even though a decree of separation from bed and board is denied. Surely the legislature did not intend to allow division of community property in a separate maintenance decree, since, in the absence of express statutory authority, "separate maintenance" contemplates only "alimony" and not property rights. Gillespie v. Gillespie, 74 Ariz. 1, 242 P.2d 837 (1952); McWilliams v. McWilliams, 216 Ala. 16, 112 So. 318 (1927). The Supreme Court of Washington has held that, absent express statutory authority, courts cannot dissolve the community by a decree for separate maintenance. Cohn v. Cohn, 4 Wash.2d 322, 103 P.2d 366 (1940).

Of the eight jurisdictions which have community property law, only Louisiana and Arizona allow actions for separation from bed and board. In Louisiana, division of the community upon separation from bed and board is expressly provided for by statute. 1 L.S.A. Arts. 123, 136 and 155. California allows division of the community in a separate maintenance action, but again only by express statutory provision. Cal.Civ.Code § 147; *See* Johnson v. Johnson, 33 Cal.App. 93, 164 P. 421 (1917) for California law prior to this provision. New Mexico allows a separate action for division of community property

3. A.R.S. § 25–318 appears under Art. 2 of Title 25, which article is entitled simply "DIVORCE." Art. 3, however, governs "SEPARATION FROM BED AND BOARD" and Art. 4 deals with "SEPARATE MAINTENANCE." Since these actions are dealt with in separate articles of the statutes, A.R.S. § 25–318 could only apply to Art. 2, which was clearly intended to deal only with absolute divorce or divorce *a vinculo matrimonii.*

"whenever the husband and wife shall have permanently separated," but again expressly by statute § 22–7–2 N.M.S.A., 1953; Poteet v. Poteet, 45 N.M. 214, 114 P.2d 91 (1941).

The remaining four community property states allow division of the community only upon absolute divorce. Bedal v. Sake, 10 Idaho 270, 77 P. 638, 66 L.R.A. 60[4] (1904); N.R.S. § 125.150 (Nev.); Pelham v. Sanders, 290 S.W.2d 684 (Tex. Civ.App. 1956); Cohn v. Cohn, supra.

Our statute on separation from bed and board is a product of the common law, rather than the Spanish law, having been adopted from Minnesota in 1913. Williams v. Williams, supra; Arizona Civil Code 1913, § 3874, et seq. Analogous relationships in common law states—concerning joint tenancy, tenancy by the entirety, dower and curtesy, etc.—are sufficiently akin to the instant problem to be instructive. Since our statute came from Minnesota, we look first to constructions rendered by the high court of that state. The statute from which ours was taken was repealed in 1933, Bliss v. Bliss, 208 Minn. 84, 293 N.W. 94 (1940), and the cases prior to that time seem to be equivocal. On the one hand, the Minnesota court has said that, when separation from bed and board is decreed:

"The marriage relation is *merely suspended* as to certain marital rights and relations, not annulled, *and, save as they may be regulated by the terms of the decree, property interest remain undisturbed.*" (Emphasis added) Evans v. Evans, 43 Minn. 31, 44 N.W. 524 (1890).

On the other hand, certain property rights have been determined and terminated by such a decree in Minnesota, but the source of the authority appears to have been an amendment to the statute in 1923. *See* Hoffmann v. Hoffmann, 174 Minn. 159, 218 N.W. 559, 561 (1928), construing Minn. Gen.St.1923, § 8613.

Other jurisdictions have allowed termination or division of property interests upon separation from bed and board where authorized by statute and in most instances have recognized that no such authority existed at common law. Nebraska: Shomaker v. Shomaker, 166 Neb. 164, 88 N.W. 2d 221 (1958), but only insofar as necessary, Sanford v. Sanford, 173 Neb. 835, 115 N.W.2d 451 (1962). New Jersey: Lavino v. Lavino, 23 N.J. 635, 130 A.2d 369 (1957); Rudin v. Rudin, 104 N.J.Eq. 524, 146 A. 351 (1929). Virginia: Gum v. Gum, 122 Va. 32, 94 S.E. 177 (1917). Oregon: Kelley v. Kelley, 183 Ore. 169, 191 P.2d 656 (1948).

In *Lavino*, the New Jersey court stated that, at common law, divorce *a mensa et thoro* had no effect on property rights of the parties, citing Supreme Council American Legion of Honor v. Smith, 45 N.J. Eq. 466, 17 A. 770 (1889). In *Rudin*, the New Jersey court of Equity stated:

"A divorce from bed and board authorizes the parties to live in separation, yet leaves the marriage in full force, and unless provided by alimony decree or statute, it does not change their property rights, or even largely their personal status or powers. 2 Bish.M.D. & S., § 1675. Where the common law is in force (and it is here) a divorce a mensa et thoro does not change the property rights of the parties. Its only effect is to compel the parties to live apart and to deprive the husband of his control over his wife." 146 A. at 352.

In *Gum*, the Virginia court recognized that property rights were unaffected by *a mensa et thoro* decrees at common law, but it interpreted the state statute (which provided, "the court may not only grant decrees for divorces, but 'may make such further decree as it shall deem expedient concerning the estate and maintenance of the parties, or either of them' "), because of its use of the words "estate * * * of

---

4. *Bedal* is overruled, in part, on other grounds by Peterson v. Peterson, 35 Idaho 470, 207 P. 425 (1922).

the parties," as authorizing termination of dower rights in a decree for divorce *a mensa et thoro*. The same court later reiterated its belief that no such authority existed outside the statute or agreement of the parties. Barnes v. American Fertilizer Co., 144 Va. 692, 130 S.E. 902 (1925).

Jurisdictions without such statutory authority have denied requests of the parties for termination or division of property interests in *a mensa et thoro* decrees. Kentucky: Gentry v. Gentry, 318 S.W.2d 870 (Ky.App.1958). Alabama: McLendon v. McLendon, 277 Ala. 323, 169 So.2d 767, 171 So.2d 234 (1964); Adair v. Adair, 258 Ala. 293, 62 So.2d 437 (1952); McWilliams v. McWilliams, supra. West Virginia: Hartigan v. Hartigan, 65 W.Va. 471, 64 S.E. 726 (1909). North Carolina: North Carolina State Highway Commission v. Myers, 270 N.C. 258, 154 S.E.2d 87 (1967); Freeman v. Belfer, 173 N.C. 581, 92 S.E. 486, L.R.A.1917E, 886 (1917). Rhode Island: Tierney v. Tierney, 50 R.I. 105, 145 A. 444 (1929).

In *Gentry*, the Kentucky Court of Appeals stated:

> "Such a limited divorce only suspends certain of the mutual rights and obligations. The judgment is merely a decree for a legal separation and may be revised or set aside at any time by the court rendering it. The judgment operates as to the acquisition of a right to property thereafter acquired, *but the status of the parties as to all property acquired previously to rendering such judgment remains the same.* Restoration may not be adjudged until there is a final judgment of divorce a vinculo." (Emphasis added) 318 S.W.2d at 872.

In *Adair*, the Alabama court said:

> "We find nothing in the cases where only a limited divorce is sought—divorce from bed and board—which sustains the power of the court to take from the wife, property, the title to which is vested in her, and give it to the husband in an effort to effect an equal division of their joint estate. Our decisions, which are

in accord with the great weight of authority dealing with that question and the effect of the married woman's statutes, are to the contrary (citing authorities).

> "In fact, the legal effect of the wife's selection and pursuance of the remedy for limited divorce is to save for herself the right of her dower interest in the husband's estate if he predeceases her and the right to share and participate in the division of his personal estate and to have a homestead or an allowance in lieu thereof of the value of $6,000 (citing authorities)." 62 So.2d at 443.

We also find this statement by the West Virginia court in *Hartigan*:

> "At the common law a divorce a mensa et thoro had no effect whatever upon curtesy or dower, nor, indeed, upon any of the marital rights of either party touching property." 64 S.E. at 726.

The Supreme Court of Rhode Island in *Tierney* said of a decree of separation from bed and board, which awarded support "in lieu of dower":

> "The [Rhode Island] statute of divorce from bed and board makes no provision at all with respect to dower, and hence the only right of the wife in such proceeding in the estate of her husband is to an allowance by the court for her separate maintenance, as expressly provided by the statute. The decree of the court in so far as it attempted to deal with dower was a nullity, as the court had no jurisdiction in this proceeding of the subject-matter, nor could the parties by consent enlarge the court's jurisdiction." 145 A. at 445.

We have found only one case which seems, at first glance, to be at odds with our holding here. That case, Atkeson v. Sovereign Camp, W. O. W., 90 Okl. 154, 216 P. 467, 32 A.L.R. 1108 (1923), contains the following statement:

> "In the earlier days of our system of jurisprudence, there were two distinct and separate types of divorces which the courts rendered. They were what were

called the divorce 'a mensa et thoro' and the divorce 'a vinculo matrimonii.' The former was a conditional decree, leaving in effect the marriage contract, in so far as the question of status was concerned, but *relieving the parties from all obligations and rights as to cohabitation, support, and property interests."* *(Emphasis added)* 216 P. at 471.

The court was dealing with an interlocutory decree of divorce *a vinculo matrimonii* (absolute divorce), referring to the same as a decree for divorce *a mensa et thoro,* and holding that the wife who obtained such a decree was no longer a "wife" so as to qualify as beneficiary under her husband's life insurance policy. We think the Oklahoma court was mistaken as to nomenclature and that the case is inapposite. *See* discussion of the case in In re Sander's Estate, 147 Cal.App.2d 450, 305 P.2d 655, 658 (1957).

 Courts do not have inherent equitable power to affect property interests. It is generally held that even in actions for absolute divorce the court has no jurisdiction to affect property rights absent statutory authority. 24 Am.Jur.2d Divorce & Separation § 926; Machado v. Machado, 58 Cal.2d 501, 25 Cal.Rptr. 87, 375 P.2d 55 (1962); Miller v. Miller, 52 Cal.App.2d 443, 126 P.2d 357 (1942); Lopez v. Lopez, 206 Md. 509, 112 A.2d 466 (1955); Brown v. Brown, 204 Md. 197, 103 A.2d 856 (1954); Ruprecht v. Ruprecht, 255 Minn. 80, 96 N.W.2d 14 (1959); Emery v. Emery, 122 Mont. 201, 200 P.2d 251 (1948). As the Maryland high court said in *Lopez:*

"It is an accepted doctrine in both England and America that a court of equity

in dissolving a marriage cannot divide the property of the spouses except by statutory authority." 112 A.2d at 468.

Other courts have held that if a decree of divorce is denied, the court has no jurisdiction to divide property interests of the parties without express statutory authority.[5] Martin v. Soden, 81 Idaho 274, 340 P.2d 848 (1959); Rothwell v. Rothwell, 219 Or. 221, 347 P.2d 63 (1959); Gooden v. Gooden, 180 Or. 309, 176 P.2d 634 (1947); Smith v. Smith, 179 Iowa 723, 161 N.W. 698 (1917); Noel v. Noel, 307 Ky. 132, 210 S.W.2d 142 (1947). The Iowa court said in *Smith:*

"But there being no ground for divorce, the law assumes that when the bonds of matrimony are severed by death the survivor's rights in the estate of the other will be protected by the statutory safeguards which have been placed around them. Until then it is not within the province of the courts to enforce a division of property between the parties." 161 N.W. at 699.

 We hold, then, that dissolution of the community in a decree of separation from bed and board must depend upon statutory authority.

We are aware that there may be some alternative basis for jurisdiction under our statutes. We will now consider other types of actions to determine whether the decree may be supported under some other legal principle.

We need not consider whether the trial court had jurisdictional authority under A.R.S. § 12-1211 et seq., Partition,[6] or A.R.S. § 12-1101 et seq.,[7] Action to Quiet

---

5. Some states have allowed division of property where a divorce has been denied, but only on the basis of statutory authority. Davis v. Davis, 216 Ga. 305, 116 S.E.2d 219 (1960); King v. King, 183 Kan. 406, 327 P.2d 865 (1958); Banta v. Banta, 202 Okl. 86, 210 P.2d 346 (1949).

6. We note, however, that we are unable to find any case in this jurisdiction in which partition of community property has been allowed and that courts of oth-

er community property states have held that the common law action of partition does not apply to the concept of community property. Jacquemart v. Jacquemart, 142 Cal.App.2d 794, 299 P.2d 281 (1956); Mahoney v. Snyder, 93 S.W. 2d 1219 (Tex.Civ.App.1936).

7. Other community property states have allowed characterization of real property without absolute divorce, Martin v. Soden, 81 Idaho 274, 340 P.2d 848 (1959); Kimble v. Kimble, 17 Wash.

Title, because those actions deal only with real property and the property of these parties consists of securities, a partnership interest, and other personalty.

■ It would be possible for the court to determine title to the subject property under the Declaratory Judgments Act, A.R.S. § 12–1831 et seq., if there was a bona fide claim of ownership, by one of the parties, as separate property.[8] It is conceded that 646.426 shares of Commonwealth Investment Company stock was the separate property of Mr. Rodieck. The original decree of separation from bed and board also declared that the remainder of the 3,068 shares of the Commonwealth Investment Company stock was also the separate property of Mr. Rodieck. All of the additional property was declared to be community property. The decree was later amended to eliminate the characterization of the other shares of stock as separate property and to award those shares to Mr. Rodieck "community property or otherwise." The amended decree, therefore, does not purport to make a determination that any of the property involved is other than community property. It follows that

the court had no authority to set aside any of the property except that conceded to be the separate property of Mr. Rodieck.

We conclude that there is no other statutory basis upon which the trial court could have divided the subject property. We will consider one other basis for jurisdiction—consent of the parties.

Some courts have allowed division of property on the basis of consent of the parties, even though a divorce was denied, Piana v. Piana, 239 S.C. 367, 123 S.E.2d 297 (1961); Mitchell v. Mitchell, 194 A.2d 828 (D.C.App.1963); Verges v. Verges, 193 A.2d 208 (D.C.App.1963).

■ Parties are not allowed to confer jurisdiction over subject matter upon the courts of this state. Jasper v. Batt, 76 Ariz. 328, 264 P.2d 409 (1953); Ward v. Stevens, 86 Ariz. 222, 344 P.2d 491 (1959); Porter v. Porter, 101 Ariz. 131, 416 P.2d 564 (1966), cert. denied, 87 S.Ct. 1028, 386 U.S. 957, 18 L.Ed.2d 107. That the parties may contract to change their community interests outside of court does not mean that they may ask the court to effect such a change.[9]

75, 49 P. 216 (1897), and we agree that such action would be proper where there exists a bona fide dispute of title between the spouses, i.e., where one spouse claims ownership as separate property against the claim of the other that it is community property or separate property of the other. Any real property so determined to be separate property may be set aside to the respective owner by the decree of separation from bed and board. Boker v. Boker, 17 Ill.App.2d 260, 149 N.E.2d 774 (1958); Marshall v. Marshall, 138 Cal.App. 706, 33 P.2d 416 (1934).

8. The reasoning of Note 7, supra, applies.

9. In this state a married couple is free to determine what the status of their property is to be. They may hold property in joint tenancy, for example, rather than as community property. Russo v. Russo, 80 Ariz. 365, 298 P.2d 174 (1956); Collier v. Collier, 73 Ariz. 405, 242 P.2d 537 (1952); Henderson v. Henderson, 58 Ariz. 514, 121 P.2d 437 (1942); Estate of Baldwin, 50 Ariz. 265, 71 P.2d 791

(1937). Our Supreme Court has also said that the status of property may be changed from community property to some other status, according to the agreement of the parties, Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893 (1963); Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459, 29 A.L.R.2d 518 (1951); Porter v. Porter, 101 Ariz. 131, 416 P.2d 564 (1966); Rundle v. Winters, 38 Ariz. 239, 298 P. 929 (1931), or by deed from one to the other, Main v. Main, 7 Ariz. 149, 60 P. 888 (1900). In doing so, they may voluntarily dissolve the community, Lincoln Fire Ins. Co. v. Barnes, 53 Ariz. 264, 88 P.2d 533 (1939); First Nat'l Bank of Mesa v. Reeves, 27 Ariz. 508, 234 P. 556 (1925); Schofield v. Gold, 26 Ariz. 296, 225 P. 71, 37 A.L.R. 275 (1924); Estate of Baldwin, supra; 15 Am.Jur.2d Community Property § 60. In Arizona Central Credit Union v. Holden, 6 Ariz. App. 310, 432 P.2d 276 (1967), this court also held that spouses may terminate their community interests by agreement. This is so even though such an agreement is not conditioned upon obtaining an absolute divorce. Smith v. Smith, 71 Ariz.

■ We are also of the opinion that dissolution of the community is inconsistent with the policy behind separation from bed and board. A.R.S. § 25–333, Subsection C, supra, authorizes the court which grants such a decree to revoke it upon reconciliation and request of the parties. It seems to us entirely inconsistent to allow legal separation *which contemplates reconciliation* and at the same time effect a complete dissolution of the common interests of the parties. As the Pennsylvania court has stated:

"A divorce a mensa et thoro is a judicial separation, giving the parties a locus poenitentiae [10] as it were; it is a separation which is not final; and it does not put it out of the power of the husband and wife to effect a reconciliation. Such a decree creates a legal separation from bed and board, but it does not put an end to the marriage tie; it merely suspends certain mutual rights and obligations of the parties definitely or for a limited time." In re Rudolph's Estate, 128 Pa. Super. 459, 194 A. 311, 312 (1937).

The community continues to exist even though husband and wife are separated, so long as not divorced. A.R.S. § 25–211, Subsection B, gives the husband control over the personalty of the community "during coverture." Wakeham v. Omega Construction Co., 96 Ariz. 336, 395 P.2d 613 (1964); Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641 (1946). Subsection A of A.R.S. § 25–211 also provides:

"A. *All property* acquired by either husband or wife during the marriage, *except that which is acquired by gift, devise or descent, or earned by the wife*

*and her minor children while she lives separate and apart from her husband,* is the community property of the husband and wife." (Emphasis added)

These subsections indicate that while husband and wife are living apart the husband retains control of the community personalty and his earnings continue to be community property. The only exception which has been made in this jurisdiction, to the general rule that separation does not change the community property interests of the parties as to either current or after-acquired interests, is where there has been abandonment. Pendleton v. Brown, 25 Ariz. 604, 221 P. 213 (1923).

In *Pendleton* our Supreme Court held that a wife who abandons her husband cannot claim an interest in after-acquired property of the husband. The decision is based upon complete abandonment and living in open adultery and also upon a property settlement of the parties at the time of separation. The court also assumed that an ex parte divorce had been procured by the wife in another state. The court rejected the Spanish law doctrine that an abandoning spouse forfeits prior rights in community property, holding only that, "by such repudiation the community is at an end so far as property subsequently accumulated is concerned." 25 Ariz. at 616, 221 P. at 218. The opinion clearly indicates an intention to limit its holding to those cases wherein one of the spouses has completely repudiated the marriage relationship upon which the community is based.[11]

It has been held that separation short of voluntary abandonment does not bring

---

315, 227 P.2d 214 (1951); Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944); Lightning Delivery Co. v. Matteson, 45 Ariz. 92, 39 P.2d 938 (1935); Roden v. Roden, 29 Ariz. 398, 242 P. 337 (1926); Pendleton v. Brown, 25 Ariz. 604, 221 P. 213 (1923).

10. "Locus poenitentiae" means "right to withdraw from an incompleted transaction." Alford v. Henderson, 237 Ala. 27, 185 So. 368, 369 (1938).

11. Other community property states have also held that abandonment of the marriage relationship terminates community property interests. Texas Cities Gas Co. v. Martinez, 82 S.W.2d 1040 (Tex.Civ. App.1935) (imprisonment of husband held to be a complete abandonment); Daly v. Rizzutto, 59 Wash. 62, 109 P. 276, 29 L.R.A. N.S. 467 (1910) (abandonment by husband and conveyance as a single man).

an end to the community property relationship. Ducasse v. Modica, 224 La. 318, 69 So.2d 358 (1953) (commitment of husband to a mental institution does not enable wife to mortgage the community property without his consent). Rankin v. Kerrville Bus Co., 115 S.W.2d 997 (Tex.Civ.App. 1938) (separation of the spouses does not enable the wife to assign one half interest in a cause of action for personal injuries, since such a recovery would become community property funds).

Our Supreme Court has said:

"It [our law on community property] recognizes that property acquired *during marriage* by community funds or the labor and industry of either spouse, *except what is earned by the wife and her minor children* while she has lived or may live separate and apart from the husband, is the common property of the husband and wife. *All* that either the husband or wife or both may acquire *during the existence of the marriage, otherwise than is specifically excepted,* is an acquest of the community." (Emphasis added) LaTourette v. La-Tourette, 15 Ariz. 200, 205–206, 137 P. 426, 428 (1914).

*See* also Estate of Torrey, 54 Ariz. 369, 95 P.2d 990 (1939).

The language in Mortensen v. Knight, 81 Ariz. 325, 305 P.2d 463 (1956); Shaw v. Greer, 67 Ariz. 223, 194 P.2d 430 (1948); and Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965 (1938), that community property rules apply "while they are living together," does not require a conclusion that they do not apply while the parties are living apart under a legal separation. We do not think our Supreme Court intended to imply that separation of the spouses changes community interests except as herein noted.

Except as to the 646.426 shares of Commonwealth Investment Company stock conceded to be the separate property of Mr. Rodieck, the decree is reversed.

KRUCKER, J., concurs.

MOLLOY, Chief Judge (specially concurring).

I concur in the result reached here and have no basic quarrel with the reasoning of the majority. However, I arrive at the same result, and largely through the same authorities, without relying principally upon this matter of "jurisdiction."

As was said by Justice Struckmeyer: "There is no magic to be promoted by the incantation of the word 'jurisdiction.' " [1] Too often, "lack of jurisdiction" is the label placed by an appellate court upon its reason for setting aside the judgment of a trial court, when the real reason for the appellate action is that the court needs an excuse for raising the defect on its own motion, and because the appellate court conceives that the defect is so serious as to render the judgment fundamentally "wrong."

In this case, the division of this community property has such a basic defect. Rather than label this an absence of jurisdiction, I would prefer to regard it as being one of a failure to state a claim insofar as the division of the community property is concerned. This failure was not recognized in the trial court by either counsel or the court, and, as I see it, this defect fatally permeates the judgment that was rendered. Both counsel and the court assumed that the plaintiff, by asking for the divorce *a mensa et thoro* and stating the cause of action for divorce, had stated a claim for an equitable division of the community property. I believe the authorities cited in the majority opinion clearly demonstrate that there is no such cause of action.

The defect of failure to state a claim is one that should be raised *sua sponte* by the court. Jacob v. Cherry, 65 Ariz. 307, 309, 180 P.2d 217 (1947); Robles v. Preciado, 52 Ariz. 113, 126, 79 P.2d 504 (1938); and see Coulter v. Stewart, 93 Ariz. 242, 247, 379 P.2d 910 (1963); 4

1. McClintock v. Serv-Us Bakers, 103 Ariz. 72, 74, 436 P.2d 891, 893 (1968).

C.J.S. Appeal & Error § 242, n. 12, at 749, and § 274, at 822.

It may be that on occasion an appellate court would be justified in overlooking even defects that fall within the general label of "failure to state a claim," providing that there was no obvious injustice to result. Here, however, it is apparent that the judgment rendered below was predicated on the assumptions that the wife had the right, once she had shown grounds for divorce, to have an equitable division of the community property and that this "divorce" decree would split the marital blanket of this couple, so that subsequent acquisitions of both spouses would be their respective separate properties. As the majority opinion demonstrates, these are erroneous assumptions, except insofar as the wife's post-"divorce" earnings are concerned. With all parties, and the court, operating under such pervading mistakes of law, it seems appropriate that the judgment should be reversed to allow these marital partners (unwilling ones, as they are) to litigate on a sound basis.