Argued October 26, reversed November 25, 1959

ROTHWELL *v.* ROTHWELL

347 P. 2d 63

*Willard K. Carey* argued the cause for appellant. On the brief were Burleigh & Carey, La Grande.

*Charles R. Cater*, La Grande, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Redding and King, Justices.

KING, J. (Pro Tempore)

This is a suit for divorce brought by Helen M. Rothwell, as plaintiff, against the defendant John E. Rothwell. Gladys Lillian Hawkins, sister of John E. Rothwell, was joined as defendant on the allegation that certain real property had been deeded to her by John E. Rothwell without consideration, and the court was asked to decree that she held the real property in trust for the Rothwells.

The defendant Gladys Lillian Hawkins was personally served with summons and complaint in the state of Washington on April 6, 1958, and although more than four weeks had elapsed, she made no appearance in the case. On June 6, 1958, on motion of plaintiff, the trial court granted a default and decree against her, without any testimony, and held that the real property should be reconveyed to the defendant John E. Rothwell.

The plaintiff based her claim for divorce against John E. Rothwell on cruel and inhuman treatment, alleged in her complaint as follows:

"1. The defendant John E. Rothwell has quarrelled with and sworn at the plaintiff on numerous and frequent occasions without cause or justification and in the course of such acts he had used foul, filthy and obscene language and has called the plaintiff filthy and obscene names on many occasions in the presence of her minor daughter and brother.

"2. The defendant John E. Rothwell on one occasion choked the plaintiff almost to death in the presence of her minor daughter.

"3. The defendant John E. Rothwell has at all

times since the marriage of the parties exhibited a penurious, tight-fisted attitude toward money and the plaintiff; said defendant never gave the plaintiff any money for her own use or support except to provide a house and pay $30.00 each two weeks into an envelope which he explicitly directed was to be used for groceries and nothing else. By reason of the said defendant's stingy and penurious acts the plaintiff has been forced to work for her own livelihood during and throughout the entire marriage of the parties. The said defendant has hoarded up his money and denied himself as well as the plaintiff anything but the bare necessities of life.

"4. The defendant John E. Rothwell boasted after the marriage of the parties about the way in which he had defrauded the plaintiff with respect to the real property hereinafter described and contemptuously announced to the plaintiff that she could never touch his property as he had arranged to place it beyond her reach, which the said defendant had in fact actually done as more specifically alleged in another place in this complaint.

"All of which acts and conduct have and do cause the plaintiff mental anguish, humiliation, embarrassment and have caused her to lose the affection she felt toward the said defendant at the time of their marriage."

To this complaint the defendant John E. Rothwell answered and cross-complained as follows:

"* * * * *

"IV.

"That plaintiff and defendant were originally married in August 1951, and lived together as wife and husband until June 1952, at which time plaintiff left defendant and brought suit for divorce, and the decree granting plaintiff a divorce was entered in that case in August 1952. That in the forepart of September of the same year, plaintiff came to the defendant and told him she had make a mistake and asked him to take her back. That defendant

agreed to this and the parties were remarried on September 12, 1952 and resumed their marital relationship. That in spite of some disagreements between them they lived quite happily until in July 1955 when plaintiff again left the family home, taking most of the furniture and household goods with her and did not return until that fall. That following her return plaintiff and defendant lived together as wife and husband, but plaintiff was continually complaining and attempting to start quarrels and disagreements with defendant. That she insisted on working and refused to stay home, and her continued complaining and dissatisfaction and refusal to maintain a home has rendered defendant's married life miserable, unhappy and burdensome to him; but in spite of this he did his best to get along with plaintiff and thought they were doing as well as usual until he came home from work on February 11th, 1958, and found that plaintiff had again moved out, taking the household furniture and equipment with her.

The reply admitted the marriage, residence, former marriage and divorce, that there were no children, and denied the material allegations of the cross-complaint alleging guilt on plaintiff's part.

On October 21, 1958, at the time of trial, the defendant John E. Rothwell filed a supplemental answer as follows:

"I.

"That since the separation of plaintiff and defendant as alleged in defendant's original Answer filed herein, the plaintiff has openly gone about with and associated with other men."

Motion to strike and demurrer to this supplemental answer were overruled by the court, and trial was had on the issues thus formed.

The trial court awarded a divorce to the plaintiff; again decreed that the real property was owned by

the defendant John E. Rothwell and not by Gladys Lillian Hawkins; that plaintiff should be awarded $2,000 judgment as alimony in gross, $350 attorney's fees, and $58.06 costs, all of which were made liens on the real property of John E. Rothwell as described in the complaint. Plaintiff was also awarded the personal property in her possession, as well as certain other listed personal property in the possession of John E. Rothwell.

In his appeal from this decree, the defendant John E. Rothwell sets out four assignments of error.

The first two attack, in order, the two decrees as they refer to the real property. The third assignment of error claims that the court erred in finding that the defendant had been guilty of cruel and inhuman treatment of the plaintiff. The fourth claims that the court erred in overlooking or ignoring the actions and conduct of the plaintiff after her separation from the defendant.

It would seem logical to take up the third and fourth assignments of error first and determine whether plaintiff was entitled to a divorce or whether a divorce should be granted to either party, before passing upon the method of disposing of the property and alimony.

These parties were first married to each other on August 11, 1951. Both had been previously married, and both had lost their former mates. Mrs. Rothwell had a daughter about 14 years of age, and Mr. Rothwell had a son who was a few years older, who was in the Navy from about July 30, 1951, to July 30, 1955.

This first marriage ended in divorce one year later, August 11, 1952. In the decree in that case Helen M. Rothwell was awarded $500 in gross alimony in lieu of any interest in the real property held in the defendant's name, and that amount was made a lien on

the real property as described in plaintiff's complaint in this case.

A few days after the divorce was granted, the parties began to talk of remarriage. In the course of the remarriage discussions and on September 3, 1952, the plaintiff signed a release of her lien on the real property, and on the same day the defendant John E. Rothwell deeded the above-described real property to his sister, Gladys Lillian Hawkins.

On September 5, 1952, the plaintiff and defendant went to Walla Walla, Washington, and applied for a marriage license. After the waiting period prescribed by Washington law had expired, they went back to Walla Walla and on the 12th of September, 1952, were married again.

Plaintiff's complaint shows that she sets forth four particular counts which she alleges constitute cruel and inhuman treatment. The first accuses John E. Rothwell of quarreling with and swearing at the plaintiff, and with using foul, filthy and obscene names in her presence and in the presence of her minor daughter and brother.

Plaintiff testified to several foul and obscene words and statements used by the defendant, which will not be repeated here. It is noted that in most instances the foul and obscene words were not directed to the plaintiff, but were used on occasions of having trouble getting wood in the stove or similar occasions, as testified to by plaintiff's brother, Raymond Montgomery. Mr. Montgomery testified that he had never heard words of that kind directed to his sister, Mrs. Rothwell.

The plaintiff's daughter, Mrs. Dixie Hoffman, testified that she had heard Mr. Rothwell call her mother foul names several times when they were quarreling.

Plaintiff herself testified that in most instances the

obscene words were not directed to her. In their argument over an income tax return she did claim he called her a foul name.

Two next-door neighbors were called as witnesses. Both visited in the Rothwell home quite often. Mrs. Daisy McNeill heard no profanity around the place and did not hear either the plaintiff or the defendant swear. Mrs. Laura M. Nash, an across-the-street neighbor, testified that she had heard both Mr. and Mrs. Rothwell swear and use profanity.

The defendant admitted that he swore and used bad language sometimes and testified that the plaintiff used the same, and just as bad language as he did. He specifically denied in his testimony using the foul words and expressions that the plaintiff claimed he used.

Charles Rothwell testified that both the plaintiff and defendant swore occasionally. He and his father, the defendant, both testified that the plaintiff threatened Mr. Rothwell with a loaded gun. The plaintiff and her daughter denied the gun incident, although they admitted there was an argument at that time.

The above summary covers the main charges and counter charges of the claimed use of obscene and foul language. It is contained in a very small part, of a very few pages, of the 190 pages of the transcript of testimony; yet it is almost the entire basis of the charge of cruel and inhuman treatment. There was a continual failure to distinguish between what happened before and after the second marriage.

The second charge made in the complaint that the defendant choked the plaintiff was clearly a claim of what happened during the first marriage and was res judicata. It was taken under the rule, after objection properly made by the defendant and sustained by

the court. Referring to the alleged choking, the court asked the plaintiff the following question:

"THE COURT: Was this before 1952?

"THE WITNESS: Yes.

"MR. CATER: We're still under the rule, your Honor. Now I think we'll declare out from under the rule at the present time, your Honor."

The third claim that the defendant exhibited a penurious, tight-fisted attitude regarding money for household expenses made available to the plaintiff, is not borne out by the testimony to a sufficient extent to make it cruel and inhuman treatment.

Instead of being allowed $30 every two weeks for groceries, as alleged in the complaint, the plaintiff's own testimony shows that $60 every two weeks was allowed for groceries alone; and the defendant paid the water, electricity, fuel, upkeep, insurance, taxes, railroad retirement and many items of furniture and improvements out of the remainder of his salary. His salary was very meager, only $3,570.56 after deductions, in 1957, and very much less than that in prior years.

Thirty dollars per week or $60 every two weeks for groceries alone does not exhibit a penurious attitude on a salary that low. The plaintiff herself testified that she ate most of her meals at the Sacajawea Coffee Shop where she was a waitress; that her daughter took her lunches at school, and that the son was not at home. The evidence also shows that meat, milk and vegetables were often secured by Mr. Rothwell, in addition to the groceries provided from the grocery allowance.

There was no testimony indicating that there was a shortage of food or groceries at any time; in fact, the plaintiff says she sometimes had money left over.

There is no merit in this claim as a basis of cruel and inhuman treatment, and it does not help plaintiff's claim for a divorce.

Summarized, the fourth and final claim of the plaintiff is that the defendant boasted of the way he had defrauded the plaintiff with respect to the real property and contemptuously announced to the plaintiff that she could never touch his property.

Evidence to support the above claim seems to be based entirely on the following questions and answers on direct examination of the plaintiff:

"Q After you remarried Mr. Rothwell, and after time passed on, did he make any reference to this property and deed?

"A Well, the only thing he kept saying all the time, if something would come up about a lawyer or people getting a divorce or anything to do with the court, he often and always made the remark, and he'd laugh and sneer about it, that 'Let the goddamn shysters try anything with me now—just let them try anything. I don't own a goddamn thing, not even as much as a shoe lace,' and often he said that.

"Q What did you do as a result of those remarks?

"A Well, I really didn't do too much, but I did talk to his son about it after he got home. * * *."

She later testified that this sort of conduct made her a nervous wreck.

These are the grounds alleged, and a summary of the proof offered in support of plaintiff's fourth claim of cruel and inhuman treatment. Dates of the alleged statements are not shown. No proof was offered as to who or what prompted the discussion. Furthermore, it is apparent from plaintiff's own statement that she did not consider them too serious, or she would have checked into them sooner and more thoroughly:

In the final analysis plaintiff's principal claim for a divorce on grounds of cruel and inhuman treatment must rest almost entirely upon the alleged use of vile and obscene language by the defendant.

17 Am Jur, Divorce and Separation 297, § 61, states:

"The use of vulgar and profane language is not of itself such cruelty as constitutes ground for a divorce if life, bodily safety, or health is not endangered thereby. Nevertheless, the habit of a husband of cursing and swearing at his wife and using vile and indecent language, especially in the presence of the children or third persons, is a material consideration together with the other circumstances of the case to show cruelty."

In the case of *Coos v. Coos*, 82 Or 693, 162 P 860, where the evidence showed abusive cursing and a lack of proper support, it was held sufficient to sustain a charge of cruel and inhuman treatment. In that case there was no evidence that the plaintiff herself used any vile language, and there was substantial evidence of failure to properly support the plaintiff and child.

In the present case, as above pointed out, there was substantial evidence that the plaintiff herself swore and used obscene language, and this was not denied by her in her rebuttal testimony. It also seems rather strange that the plaintiff would have worked nights and left her young daughter alone with the defendant during most of the girl's high school career, if the plaintiff was so concerned about the kind of language the defendant used. It is noted that the defendant, Mr. Rothwell, asked the plaintiff to quit work.

Defendant alleged in his answer and offered testimony to show that plaintiff left the home and removed a great deal of the furniture with her, in July, 1955, and remained away until October, 1955. She left without his knowledge or consent and returned of her own accord. This was not denied in any way by the plain-

tiff in her rebuttal testimony. She left in the same manner on February 11, 1958.

The evidence also shows that the plaintiff associated with another man, after her separation from the defendant and before the trial of the divorce case in the circuit court. She denies any wrongdoing, but evidence shows her actions to have been far from discreet for a person seeking a divorce, and who was still married.

In *Guinn v. Guinn*, 188 Or 554, 561, 217 P2d 248, Mr. Justice LUSK says:

"Marriage under our law is a civil contract in which the state has a vital interest. It is not to be dissolved by mutual agreement nor for light reasons. It is still true that the integrity of the family is basic to our American civilization. * * * It is cruel and inhuman treatment for which Mrs. Guinn indicts her husband. These are strong words, much watered down in these days of easy divorce. But they certainly do not comprehend every slight defect of character in a husband or a wife, nor every lapse from the highest standard of marital conduct. They suggest rather a purpose of one spouse to injure the other, or such gross and callous want of consideration for the sensibilities and legitimate wishes and interests of the other as to amount in law to such a purpose."

In the present case the plaintiff has failed to prove sufficient cause for divorce as alleged in her complaint. Likewise the defendant has failed to prove a sufficient cause as alleged in his answer and cross-complaint. Both parties have been at fault, and the fault of one substantially equals the fault of the other. They are in pari delicto, and divorce should be denied both parties.

In *Hollingsworth v. Hollingsworth*, 173 Or 286, 292, 145 P2d 466, Justice BRAND says:

"It is firmly established by decisions of this court that he who comes into equity must come with

clean hands, and that this doctrine is applicable to divorce cases. Carmichael v. Carmichael, 106 Or 198, 211 P 916 (1923). When the conduct of the parties is reprehensible to a kindred degree, the court ought not to interfere at the instance of either."

*Mueller v. Mueller*, 165 Or 153, 105 P2d 1095, says:

"* * * The evidence does not preponderate decisively in favor of one or the other. Neither of them can be said to have been very slightly, and the other very greatly, at fault."

Having denied the divorce, it would neither be necessary nor proper to rule on the property rights. *Gooden v. Gooden*, 180 Or 309, 314, 176 P2d 634.

The decree of the circuit court is reversed. Neither party to recover costs.