Argued and submitted July 2, 2001, reversed and remanded in part;
otherwise affirmed March 13, 2002

MOUNT JOSEPH CATTLE COMPANY, INC.,
and Buhler Ranch Partnership,
an Oregon Limited Partnership,
*Respondents,*

*v.*

MAKIN FARMS, INC.,
an Oregon corporation,
*Appellant.*

MAKIN FARMS, INC.,
an Oregon corporation,
*Counterclaim Plaintiff,*

*v.*

MOUNT JOSEPH CATTLE COMPANY, INC.,
and Buhler Ranch Partnership,
an Oregon Limited Partnership,
*Counterclaim Defendants.*

97-03-11143; A106612

42 P3d 331

Lindsey H. Hughes argued the cause for appellant. With her on the briefs was Keating Jones Bildstein & Hughes, P.C.

Raymond S. Baum argued the cause for respondents. With him on the brief were Julie E. Smith and Mautz Baum & O'Hanlon, LLP.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a summary judgment dismissing its counterclaims for misrepresentation, rescission, and restitution. Its principal contention on appeal is that genuine issues of material fact preclude entry of summary judgment. It also contends that the trial court erred in denying its motion to add two other counterclaims. We conclude that the trial court erred in entering summary judgment but that it did not abuse its discretion in denying the motion to amend.

On review of a summary judgment, we state the facts in the light most favorable to the nonmoving party. *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). We will affirm only if the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

Plaintiff Buhler Ranch Partnership (Buhler Ranch) owns a ranch in Wallowa County. Don Buhler is a partner. Plaintiff Mount Joseph Cattle Company, Inc. (Mount Joseph), owns approximately 860 cow/calf pairs and 60 bulls. It grazes some of the cattle on Buhler Ranch. The balance it grazes on allotments to which it has permits administered by the United States Forest Service (Forest Service).

On February 22, 1994, Buhler Ranch and Mount Joseph agreed to lease the ranch, the cattle, and the grazing rights to defendant Makin Farms, Inc. (Makin Farms), the president of which is Kirk Makin. The lease had an expiration date of January 1, 1999.

Some time after execution of the lease agreement, Makin developed concerns that it might be contrary to federal regulations. In particular, Makin became concerned that Mount Joseph had not submitted the lease agreement to the Forest Service for approval, as he understood federal law to require. In addition, he worried that the leased property was not sufficient under applicable federal regulations to graze the number of cattle specified in the agreement.

At the time the agreement was executed, however, Makin did not know that the lease did not comply with the foregoing federal regulations. According to Makin,

"I had no knowledge that [the agreement] was not in compliance with Forest Service regulations. Buhler told me that if we met certain conditions, it was okay. To my knowledge, those conditions were met. The Forest Service representatives that I met with appeared satisfied those conditions were covered by our agreement, as Buhler submitted them in writing, and that there was no problem.

"* * * * *

"The Forest Service knew that Buhler and I had a written lease agreement. They never once asked me for a copy of that agreement. I also knew that under [Forest Service] rules it was Buhler's responsibility to be in compliance with his Forest Service Grazing Permits since he was the Permittee. I did not learn until two (2) years later that prior approval of all the agreements was necessary to comply with Forest Service regulations."

During the 1995 grazing season, it became apparent to Makin that Buhler's ranch was overstocked, that is, there was not enough grazing land for the number of cattle leased. He called Buhler and explained that he wanted out of the lease. Buhler insisted that it was not necessary to terminate the lease and that all relevant Forest Service requirements either had been, or could be, satisfied.

Makin insisted on terminating the lease. In May 1996, the parties entered into a second agreement that terminated the lease, effective December 31, 1996, under the terms of which Makin Farms was to deliver approximately 860 bred cows and 60 bulls back to Mount Joseph. At the expiration of the new lease term, Makin Farms did not deliver all 860 bred cows and 60 bulls. Meanwhile, in early 1997, after talking to others who had managed cattle for Buhler, Makin came to believe that Buhler was not merely mistaken about the Forest Service regulations but had intentionally misrepresented to him what they required.

In March 1997, Buhler Ranch and Mount Joseph initiated this action against Makin Farms for breach of contract and specific performance. In November 1997, Makin Farms

answered and asserted counterclaims for misrepresentation, rescission, and restitution of amounts expended on ranch repairs and other expenses during the course of the lease terms from 1994 through 1996. Makin Farms moved for summary judgment on Buhler Ranch's and Mount Joseph's claims. In return, Buhler Ranch and Mount Joseph moved for summary judgment on Makin Farms' counterclaims. Meanwhile, in August 1998, while the summary judgment motions still were pending, Makin Farms moved to amend its answer to add counterclaims for money had and received and unjust enrichment.

The trial court denied the motion to amend. As for the summary judgment motions, the court concluded that the original 1994 lease agreement was illegal and unenforceable. Consequently, the court granted Makin Farms' motion against plaintiffs' specific performance and breach of contract claims. At the same time, the court also granted the summary judgment motion against Makin Farms' counterclaims. According to the court, Makin Farms was a "co-participant in the original illegal agreement" and knew of the illegality before entering into the original 1994 lease agreement. Therefore, the court concluded, Makin Farms was *in pari delicto* and not entitled to seek damages for misrepresentation or rescission and restitution.

Only Makin Farms appeals, arguing that the trial court erred in entering judgment against it on its counterclaims. According to Makin Farms, those counterclaims are based on the contention that Buhler misrepresented, and Makin Farms was ignorant of, the carrying capacity of the ranch and allotment lands. There is evidence of both facts in the summary judgment record, argues Makin Farms; as a result, this case should be remanded for trial on the merits.

Buhler Ranch and Mount Joseph do not attempt to defend the trial court's reasoning in granting summary judgment, conceding that there are at least genuine issues of material fact concerning Makin's knowledge of the illegality of the lease agreement in 1994. Buhler Ranch and Mount Joseph argue that the summary judgment nevertheless should be affirmed for three reasons: (1) because it is undisputed that Makin knew of the illegality by 1996, the parties

were *in pari delicto* with respect to the 1996 agreement, and that precludes relief on the counterclaims, as a matter of law; (2) by entering into the 1996 agreement after learning of the illegality, Makin Farms effectively "settled" all issues arising under the earlier agreement, as a matter of law; and (3) by entering into the 1996 agreement, Makin Farms waived the right to rescind, once again, as a matter of law. Buhler Ranch and Mount Joseph acknowledge that they advanced none of those arguments to the trial court, but they contend that judicial efficiency would be served by affirming the trial court on any of the alternative grounds that they assert. Makin Farms objects to the assertion of the alternative grounds for affirmance because none was suggested to the trial court and because each necessitates resolving genuine issues of material fact.

■ We may consider alternative arguments for affirmance presented for the first time on appeal if they are based on evidence already in the record and if judicial efficiency would be well served. *Frady v. Morrow,* 169 Or App 250, 255-56, 9 P3d 141 (2000). Even so, for those alternative arguments to succeed in supporting the entry of summary judgment, they must demonstrate the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Robinson,* 332 Or at 455.

■■ We begin with Buhler Ranch's and Mount Joseph's first alternative argument, that the undisputed facts show that Makin was *in pari delicto* by 1996 and therefore may not seek to disaffirm the contracts. The general rule is that a party to an illegal contract may not obtain relief in law or equity arising out of the contract. *Johnson Lbr. Corp. v. Leonard et al.,* 192 Or 639, 651, 232 P2d 804, *on rehearing* 192 Or 650, 651, 236 P2d 926 (1951). As with most general rules, there is an exception:

> " 'Where the parties to an illegal bargain, though both blameworthy, are not in pari delicto, and one of them has not been guilty of serious moral turpitude, he can repudiate the bargain, and if he has rendered any performance thereunder, recover it or its value.' "

*Oregon & Western Col. Co. v. Johnson,* 164 Or 517, 536, 102 P2d 928 (1940) (quoting *Restatement of Contracts,* § 604); *see*

*also State v. Pettit*, 73 Or App 510, 513, 698 P2d 1049, *rev den* 299 Or 522 (1985) ("when the parties are not equally at fault, courts have allowed exceptions to the general rule").

■■    In this case, there is evidence that Makin did *not* know about the unlawfulness of the lease agreement that was executed in 1994. Indeed, he specifically testified that he did not know about violations of Forest Service regulations until two years later. Moreover, although it is true that Makin became aware of certain violations of Forest Service regulations in 1996, that fact alone does not establish that the parties were *in pari delicto*, that is, equally at fault. *See generally Rothwell v. Rothwell*, 219 Or 221, 231, 347 P2d 63 (1959); *Kennedy et al. v. Colt*, 216 Or 647, 653, 339 P2d 450 (1959). Buhler Ranch and Mount Joseph do not explain, and we do not understand, how we can determine whether the parties are equally at fault without resolving issues of disputed fact concerning representations made about compliance with Forest Service regulations, assignments of responsibility for obtaining Forest Service approval, motives, intentions, and the like. We conclude that the fact that Makin may have learned about the illegality of the lease agreement by 1996 does not establish that he was *in pari delicto*, as a matter of law.

We turn to the second alternative argument, that the execution of the 1996 agreement effectively "settled" all disputes, as a matter of law. In support of that argument, Buhler Ranch and Mount Joseph rely on *dictum* from *Conzelmann v. N.W. P. & D. Prod. Co.*, 190 Or 332, 354, 225 P2d 757 (1950). They contend that, under *Conzelmann*, when a party to an agreement learns of a misrepresentation and then complains, negotiates new concessions, and enters into a new agreement involving the same transaction intending to settle all disputed issues, the new agreement precludes any later action for damages arising out of the fraud. They argue that, by entering into the 1996 agreement, Makin Farms did just that. Makin Farms contends that a subsequent agreement cannot bar recovery for misrepresentation unless the parties intended the agreement to have that effect; in this case, it argues, there is no evidence that the parties intended the 1996 agreement to bar a later recovery for fraud.

In *Conzelmann*, the Supreme Court stated that:

"It is well established by the authorities that when one who has been induced by fraud to enter into a contract, subsequently, with knowledge of the fraud, enters into another agreement respecting the same transaction with the one guilty of the fraud, he, the injured party, thereby waives and relinquishes all right to damages on account of such fraud. If he receives some substantial concession from the one guilty of such fraud, he waives his right to insist further upon holding the wrongdoer responsible in damages for the fraud."

190 Or at 354. That rule since has been applied in a number of cases. In *Nielsen v. Stephens*, 165 Or App 414, 997 P2d 257, *rev den* 330 Or 363 (2000), we reviewed those cases and concluded that the rule applies if: (1) the second agreement concerns the same transaction as the fraud; (2) the complaining party receives a substantial concession *based on its claim of fraud*; and (3) all contracting parties intend that the second contract operate as a waiver *of the claim of fraud. Id.* at 420-23.

■ In this case, there is no question but that Makin Farms obtained some concessions in the 1996 agreement; among other things, it obtained the early termination that it desired. But there is at least a triable issue of fact whether those concessions were obtained because Makin Farms had complained about fraud. Makin testified that he did not come to believe that Buhler intentionally had misrepresented the carrying capacity of the ranch and allotment lands until *after* the negotiation of the 1996 agreement. There likewise is at least a triable issue of fact whether Makin intended the 1996 agreement to operate as a waiver of any future claims of fraud; as we have noted, Makin contends that he did not even know about any fraud until after the agreement was negotiated. We therefore conclude that the second alternative argument is unavailing.

■ That leaves the third, which is that, by failing to complain about fraud in 1996 and attempting to disaffirm the contract only after this action was filed in 1997, Makin Farms waived its right to rescission and restitution. In support of that argument, Buhler Ranch and Mount Joseph cite

*Powell v. Goff*, 126 Or App 194, 199, 868 P2d 26, *rev den* 318 Or 661 (1994). In that case, the plaintiff negotiated a contingent fee agreement with his attorneys calling for payment to the attorneys of one-third of any recovery. A short time later, the case settled for more than $3 million in cash and annuities. The plaintiff then entered into a second agreement with the attorneys to pay them one-third of monies paid to him as they were received. Eight years later, the plaintiff attempted to rescind the second agreement on the ground that the amount of attorney fees was unconscionable. The trial court agreed, and we reversed, holding that, by accepting the benefits of the agreement eight years after learning all of the facts relevant to a possible claim for rescission, the plaintiff had waived any right to complain about the unconscionability of his fee agreement. *Id.* at 199.

In this case, there is a jury question whether Makin Farms knew all of the facts relevant to their counterclaims based on misrepresentation until very shortly before those counterclaims were first asserted. As we have noted in the context of the previous argument, Makin testified that he did not learn about Buhler's intentional misrepresentations until after the May 1996 agreement was negotiated. If Makin Farms did not know all of the facts relevant to a possible misrepresentation claim when it entered into the agreement, then its doing so cannot have amounted to a waiver of any future misrepresentation claims. *See id.* ("the relevant inquiry is whether plaintiff acted promptly to rescind after obtaining knowledge of the *facts* constituting the grounds for rescission") (emphasis in original). We conclude that the third alternative ground for affirmance also fails. The trial court therefore erred in entering summary judgment dismissing Makin Farms' counterclaims.

Makin Farms also asserts that the trial court erred in denying its motion to amend by adding counterclaims for money had and received and unjust enrichment. We review the denial of a motion to amend for an abuse of discretion. *Quillen v. Roseburg Forest Products, Inc.*, 159 Or App 6, 10, 976 P2d 91 (1999). Having reviewed the record, we conclude that the trial court did not abuse its discretion.

Judgment dismissing counterclaims for misrepresentation, rescission, and restitution reversed and remanded; otherwise affirmed.