Argued and submitted February 15, 2001, Valley Catholic High School, Portland,
reversed and remanded December 11, 2002

Anita SANDE,
*Appellant,*

*v.*

CITY OF PORTLAND,
a municipal corporation,
*Respondent.*

9709-06947; A107724

59 P3d 595

Mark McDougal argued the cause and filed the brief for appellant.

Harry Auerbach, Senior Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

**DEITS, C. J.**

Plaintiff appeals from a judgment granting defendant City of Portland's motion for summary judgment and dismissing plaintiff's complaint. On review of the grant of summary judgment, we consider the facts, and all of the reasonable inferences that may be drawn from them, in the light most favorable to plaintiff, the nonmoving party. *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001); *Mount Joseph Cattle Co., Inc. v. Makin Farms, Inc.*, 180 Or App 27, 29, 42 P3d 331 (2002). We will affirm only if the record demonstrates that there is no genuine issue of material fact and that plaintiff, the moving party, is entitled to judgment as a matter of law. ORCP 47 C.[1] Under that standard of review, we reverse the trial court's judgment.

Beginning on July 31, 1995, a series of eight robberies sharing certain characteristics occurred in the "Sullivan's Gulch" neighborhood of northeast Portland where plaintiff lives. The robberies—commonly called the "mountain bike robberies"—were perpetrated on solitary victims by a man, identified in the record as "black," riding a bicycle between 9:00 p.m. and midnight. The perpetrator threatened the victims with a gun, or acted as if he had a gun, and he took money or possessions, but did not physically harm the victims.

At about 11:00 p.m. on September 8, 1995, plaintiff was crouched on the sidewalk in front of her house in the Sullivan's Gulch neighborhood, working in her yard. A bicyclist, described in the record as "black," approached; plaintiff said hello but did not change her position. As the cyclist passed, plaintiff felt a blow to her head. After she recovered from the pain, she stood up, called to the cyclist, and began to

---

[1] ORCP 47 C was amended in 1999. Or Laws 1999, ch 815, § 1. The amendments "apply to all actions pending on * * * the effective date of" the act, which was October 23, 1999. Or Laws 1999, ch 815, § 2. As the Supreme Court explained in *Robinson*, 332 Or at 458-60, when a case was already on appeal on October 23, 1999, the pre-amendment summary judgment standard is applicable. In this case, the appeal was perfected on October 13, 1999. We accordingly apply the pre-1999 version of ORCP 47 C, and all citations in this opinion are to that version unless otherwise indicated.

chase him. The cyclist continued and said, "You turned your head," and pedaled away. He did not ask for money, threaten her with a gun, or attempt to rob her. Plaintiff alleges that she suffered serious injury as a result of the incident.

Detective Erin Kelley led the Portland Police Bureau investigation of the mountain bike robberies. Kelley determined how to conduct the investigation, including choosing among investigative techniques and deciding whether to inform residents of a threat in their neighborhood. Kelley notified uniformed officers assigned to the Northeast Precinct that she thought she had identified a pattern to the robberies. Kelley also called the president of the Sullivan's Gulch Neighborhood Association in the hope that the association would use telephone trees to notify neighbors. Further, she ordered police surveillance in the neighborhood in an attempt to catch the robber. Kelley attended meetings of the neighborhood association at which she gave a description of the nature of the robberies and the perpetrator and discussed possible security improvements. After learning of plaintiff's incident, Kelley called plaintiff and told her that the police had been conducting surveillance in the neighborhood. Kelley did not tell plaintiff not to warn neighbors of the presence of the mountain bike robber. During her interview, Kelley referred to plaintiff's assailant as the mountain bike robber.

Plaintiff spoke to her neighbors about her incident. She learned that others in the neighborhood were already aware of the existence of the mountain bike robber because of notification from the neighborhood association. Not all of her neighbors had been notified, however, and plaintiff distributed notices to the remainder of the neighborhood. During this distribution, she learned from one of her neighbors, McGuire, that he had been assaulted before plaintiff's incident and, according to McGuire, that Kelley had told him not to tell anyone. That alleged directive by Kelley to McGuire not to inform others of the assault forms the core of plaintiff's case against the city.

Plaintiff filed a complaint for personal injuries alleging injury from an attack by the mountain bike robber. Plaintiff alleged that, in early September 1995, plaintiff's neighbor, McGuire, informed Kelley that he was going to warn his

neighbors about the mountain bike robber. Plaintiff further alleged that Kelley told McGuire not to warn other neighborhood residents. Plaintiff contended that the assault against her was caused by Kelley's negligence in instructing McGuire not to warn other neighborhood residents and in interfering with McGuire's plans to inform other residents of the mountain bike robber.

The city moved for summary judgment on a number of alternative grounds. The city first asserted that it was immune from the claim under ORS 30.265(3)(c), which provides immunity to public bodies for claims based on the performance of discretionary functions. The city also asserted, as an alternative, that it was not negligent as a matter of law. The city contended that it created no unreasonable risk to plaintiff and was justified in performing all of the acts alleged. The city argued further that it could not be held liable for harm that was caused by an intervening intentional criminal act. It finally contended that no reasonable juror could conclude that the mountain bike robber was the person who struck plaintiff.

In support of its motion for summary judgment, the city submitted an affidavit of the Chief of Police at the time, Charles A. Moose. Chief Moose's affidavit stated that the Portland Police Bureau does not have a standard policy or practice "to instruct crime victims who would otherwise tell and warn their neighbors of street robbers, not to so warn their neighbors, so the police can attempt to catch criminals 'in the act.'" Moose explained that it is not possible to anticipate all of the factors that will arise in criminal investigations. Moose stated that the police bureau relies on the judgment of officers leading investigations to evaluate each situation and to determine the appropriate balance between competing law enforcement objectives such as citizen protection and apprehension of criminals.

The city also submitted Kelley's affidavit. Among other things, Kelley stated:

"I was charged with determining how to conduct the investigation, including, but not limited to, whether and when to conduct surveillance, what other investigative techniques

to use, whether to notify citizens of a threat in their neighborhood and when and how to provide such notification. As the detective primarily responsible for the investigation, I used my judgment to decide how best to achieve sometimes conflicting goals, such as citizen protection through notification and the apprehension of the Mountain Bike robber. I exercised my best judgment to assess and rank these and other policy objectives of law enforcement and to design an investigation to meet these objectives."

The trial court granted the city's motion on the ground that the city was entitled to discretionary immunity under ORS 30.265(3)(c).

■     On appeal, plaintiff argues that the trial court erred in granting the city's motion for summary judgment, contending first that the city did not show that it was entitled to discretionary immunity as a matter of law. The public body bears the burden of establishing entitlement to discretionary immunity. *Vokoun v. City of Lake Oswego*, 335 Or 19, 31, 56 P3d 396 (2002). On summary judgment, "[t]he moving party has the burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997) (internal quotation marks omitted). Accordingly, the trial court properly granted summary judgment on this basis only if the city established every element necessary to support discretionary immunity under ORS 30.265(3)(c).

■     The Oregon Tort Claims Act provides that a public body is generally subject to suit for its torts and those of its officers, employees, and agents acting within the scope of their employment. ORS 30.265(1). However, ORS 30.265(3)(c) provides immunity for public bodies, officers, employees, and agents under certain circumstances. As relevant here, ORS 30.265 provides:

"(3)  Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c)   Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

In *Garrison v. Deschutes County*, 334 Or 264, 273, 48 P3d 807 (2002), the Supreme Court described the type of conduct that is entitled to immunity under ORS 30.265(3)(c):

"[C]onduct is 'discretionary' in the sense that immunity attaches to its negligent performance if the decision is the result of a choice among competing policy considerations, made at the appropriate level of government[.]"

As we explained in *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931 (2002), there are

"three criteria that a government function or duty must meet in order to qualify for discretionary immunity. It must be the result of a *choice*, that is, the exercise of judgment; that choice must involve public *policy*, as opposed to the routine day-to-day activities of public officials; and the public policy choice must be exercised by a body or person that has, either directly or by delegation, the *responsibility* or authority to make it."

(Emphasis in original.)

■        As noted, summary judgment in the city's favor on discretionary immunity grounds was proper only if it established *all* of the elements of discretionary immunity. One element that must be established is that a choice involving the exercise of judgment was in fact made. *See Vokoun*, 335 Or at 31 ("To qualify for discretionary immunity under ORS 30.265(3)(c), the city must show that it made a decision involving the making of policy as opposed to a routine decision made by employees in the course of their day-to-day activities." (Internal quotation marks and brackets omitted.)). Plaintiff contends that, because the city failed to establish that Kelley engaged in the "exercise of judgment" that is required to support discretionary immunity on the facts in this case—namely, that she exercised judgment to instruct McGuire not to warn others—it did not meet its burden. The city responds that it is sufficient that it admitted, for purposes of the summary judgment motion only, that Kelley told McGuire not to warn other neighbors. For the reasons

explained below, we conclude that the city failed to establish an essential element of discretionary immunity.

Chief Moose's affidavit establishes that decisions concerning how to conduct a criminal investigation are delegated to the lead detective responsible for the case. That delegation means that the decision-making structure in the City of Portland Police Bureau permits the lead detective to make at least some significant decisions about the means to achieve investigatory ends, and it might mean that detectives like Kelley had been delegated the kind of policy-making authority that, if exercised, would support discretionary immunity. However, delegation of the correct type of authority, standing alone, is not sufficient. The public body must establish that the authority was in fact exercised to result in the action or inaction complained of—in this case, to decide to tell McGuire not to warn other neighbors. Accepting that Kelley was authorized to exercise policy choices when conducting an investigation, the question remains whether Kelley, in fact, exercised that authority and made a choice between competing policy considerations in telling McGuire not to warn other neighbors.

Plaintiff argues that, notwithstanding the city's admission for the sake of the summary judgment motion, there is no evidence in the record that Kelley made a policy choice entitling the city to discretionary immunity. Plaintiff asserts that the city "may not deny that [it] did something and then assert why [it] did it." Plaintiff explains that, because Kelley "denied informing plaintiff's neighbor not to warn plaintiff, Detective Kelley cannot state a basis for doing what she denies having done." In sum, plaintiff argues that there is no evidence that the detective engaged in the balancing of competing law enforcement objectives claimed as an essential element of the city's discretionary immunity defense.

According to the city, however, Kelley weighed "such policy considerations as how to increase citizen protection without unduly compromising the opportunity to catch the robber." According to the city, any decision she made to tell McGuire not to warn others would have represented an exercise of the discretion she had been delegated, specifically, "to

decide that the mechanisms she had selected for public notification were preferable, from a public policy standpoint, to having neighbors spread alarm by unorganized, word of mouth reports." So understood, according to the city, her actions represented a choice of the means to fulfill her responsibility to protect the public.

The city's explanation is not really responsive to plaintiff's argument. The city maintains its denial that Kelley told McGuire not to warn his neighbors, but then says that, even if she did so advise McGuire, "her decision to do so would have been consistent with the exercise of the discretion she had been delegated." The problem with the city's response, as plaintiff correctly points out, is that it supports at best a conclusion that Kelley *could have made* a judgment call that would have been entitled to discretionary immunity, not that she *did* make that judgment call. *See Vokoun*, 335 Or at 33 (city was not entitled to discretionary immunity despite existence of capital improvements plan that might have addressed problem on the plaintiff's property in the absence of evidence that city council in fact considered whether to address the problem). Nothing in the summary judgment record shows that Kelley made a choice to tell McGuire not to warn others and, in doing so, weighed the costs and benefits to the public and her investigation that might accompany telling McGuire not to warn others. In effect, the city asks us to uphold the grant of summary judgment on the basis of a hypothetical exercise of discretion that is not supported by the record before us. We decline to do so. As a matter of law, discretionary immunity requires evidence not only *that* a decision was made, but *how* a decision was made. The scope of the city's factual admission for summary judgment, in other words, is not broad enough to establish all that the city needs to establish to be entitled to summary judgment on discretionary immunity grounds. The city offered no evidence about how Kelley made any decision to tell McGuire not to warn, and, accordingly, it did not show that it was entitled to discretionary immunity as a matter of law. The trial court erred in granting summary judgment on discretionary immunity grounds.

The city made several alternative arguments in the trial court. On appeal, the city again raises those arguments, arguing that the trial court was right for the wrong reason.

*See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 658-60, 20 P3d 180 (2001) (reviewing court may affirm on a different basis under certain conditions).

The city first asserts that, as a matter of law, it was not negligent because Kelley had no knowledge of any particularized risk to the plaintiff, and she took reasonable steps to inform residents of Sullivan's Gulch of the mountain bike robber through the neighborhood newsletter, a telephone tree, and meetings. According to the city, Kelley had no duty to provide plaintiff with a particular measure of safety beyond that provided to the public at large. *See Buchler v. Oregon Corrections Div.*, 316 Or 499, 514-15, 853 P2d 798 (1993) (discussing failure to warn); *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987) (regarding foreseeable harm). The city adds that there is no evidence in the record to support the conclusion that, even if Kelley had instructed McGuire not to warn others about the robber, such action created an unreasonable risk of danger to the plaintiff.

Taking the facts in the light most favorable to the plaintiff, we do not agree with the city's assertion that, as a matter of law, an instruction by Kelley to McGuire not to warn others did not create an unreasonable risk of harm to plaintiff. The undisputed facts show that the neighborhood was subject to repeated assaults and robberies by an individual on a mountain bike who struck persons who were by themselves between 9:00 p.m. and midnight. The question presented is whether those circumstances could lead a reasonable jury to conclude that the detective's alleged direction to McGuire not to warn others of the incident created a foreseeable risk of harm to plaintiff. *See Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 437, 760 P2d 874 (1988); *Fazzolari*, 303 Or at 17-18; *Brown v. Washington County*, 163 Or App 362, 373-74, 987 P2d 1254 (1999), *rev den*, 331 Or 191 (2000). Applying that standard, we cannot say, as a matter of law, that the facts as presented fall within the category of an "extreme" case in which no reasonable factfinder could find the risk to plaintiff foreseeable. *Hefty v. Comprehensive Care Corporation*, 307 Or 247, 253, 766 P2d 1026 (1988). Rather, it is reasonably foreseeable that the assaults by the mountain bike robber would continue until the individual was apprehended, and it is also foreseeable that residents of the affected neighborhood who were warned of the events would

avoid being alone on the street at night. It is, then, not Kelley's alleged failure to warn plaintiff of the possibility of the assault, it is Kelley's directive to McGuire not to warn when he otherwise would have done so that could be said to create a foreseeable risk of harm to plaintiff.

In that regard, we add that it is evident that the city recognized the danger presented by the robber and the need to warn residents of the neighborhood because it provided warnings through neighborhood groups. A jury could reasonably conclude that the specific direction given to McGuire not to warn created an unreasonable risk of harm to persons McGuire would otherwise have contacted. That McGuire did not tell Kelley of his intention to inform plaintiff in particular does not, in our view, eliminate the foreseeable nature of the risk to plaintiff that was presented by the directive not to warn.

The city also argues that summary judgment should have been granted because it cannot be held liable for the intervening criminal act of a third party. The city asserts that the alleged harm here was produced at the hand of an unknown third party of whom the city had no knowledge and over whom it exercised no supervision or control. The city appears to acknowledge that Kelley's alleged act may have facilitated the purported crime in some sense, but it contends that mere facilitation of the intentional criminal act of another does not cause the harm or support liability for the harm. The city argues that there is no special relationship between the city and plaintiff or between the city and the mountain bike robber. *See Buchler*, 316 Or at 504-07 (discussing liability where a "special relationship" exists between the defendant and the plaintiff, or where the defendant occupies a "status" with respect to the actor, such that the defendant has a duty to protect the plaintiff from the acts of a third party). Specifically, the city contends that it cannot be held to have taken charge of the robber and become responsible for his acts.

The city's argument, however, does not meet plaintiff's theory. Plaintiff does not allege that the city should have, but failed to, exercise supervision or control over the mountain bike robber. Nor does plaintiff argue that the city

had a duty to warn her. Plaintiff does not rely on any relationship between herself and the city or between the robber and the city to establish her claim. Instead, plaintiff argues, under a general foreseeability theory, that Kelley interfered with McGuire's plan to warn neighbors and that it was reasonably foreseeable that that interference could lead to injuries like plaintiff's.

The city contends that in *Buchler*, 316 Or at 505-06, the Supreme Court held that Oregon follows the general rule of nonliability for the intentional acts of third parties as set out in section 315 of the *Restatement (Second) of Torts* (1965), subject to the "special relationships" exceptions set out in sections 316 to 319. Accepting that that is true, it neither meets plaintiff's argument nor reflects completely the analysis of *Buchler*. First, plaintiff, both in her opposition to the city's summary judgment motion and in her brief on appeal, relies on sections 326 and 327 of the *Restatement*. Those sections outline liability for intentional and negligent prevention of assistance and are not based on any special relationship but on general foreseeability principles. Moreover, in *Buchler*, the Supreme Court, after concluding that plaintiff had not established defendant's liability under a special relationship theory, observed that that conclusion "d[id] not end our consideration of this case." 316 Or at 507. The court then considered two of plaintiff's "general negligence" claims that were based on general foreseeability principles, not on any allegation of special relationship. *Id.* at 507-16; *see also McAlpine v. Multnomah County*, 166 Or App 472, 480, 999 P2d 522 (2000) (although the plaintiffs had not alleged facts to support liability under *Restatement* section 319, trial court erred in granting summary judgment on alternative general foreseeability theory); *Cunningham v. Happy Palace, Inc.*, 157 Or App 334, 338-39, 970 P2d 669 (1998), *rev den*, 328 Or 365 (1999) (because there was evidence that it was reasonably foreseeable that the defendant's actions would expose the plaintiff to the criminal actions of third parties, trial court erred in granting summary judgment).

■        Under a general foreseeability theory,

"in order to survive a defendant's motion for summary judgment in a case involving the criminal acts of third parties,

there must be facts in the record to support a conclusion that the defendant could have reasonably foreseen, as a result of the defendant's negligence, an unreasonable risk of such danger to the plaintiff."

*Cunningham*, 157 Or App at 338-39 (citation omitted). Here, Kelley was aware of the robber's method, the neighborhood in which he operated, the times of his criminal incidents, and the solitude of his victims. Given those conditions, we again cannot say as a matter of law that a reasonable jury could not find further criminal incidents against sole individuals, at night, in the Sullivan's Gulch neighborhood to be foreseeable. Further, plaintiff alleged that McGuire informed Kelley of his plan to warn neighbors and that Kelley told him not to do so. For that reason, that same reasonable jury could understand Kelley's alleged instruction to McGuire not to warn others in the neighborhood as exposing one of his neighbors—plaintiff—to risk of harm.

■     The city's final argument is that the evidence does not establish that the individual striking plaintiff was the mountain bike robber. The city points to the known method of operation of the mountain bike robber and contrasts that method with facts about the assailant who struck plaintiff. For example, while the mountain bike robber and the cyclist striking plaintiff shared certain physical characteristics, the mountain bike robber was armed and committed robbery, but the person who struck plaintiff apparently was not armed and did not rob her. Further, the mountain bike robber did not physically harm his victims; however, plaintiff was injured.[2] The city concludes that "no reasonable jury could conclude that it is more likely than not that the harm

---

[2] Plaintiff filed a memorandum in opposition to the city's motion for summary judgment in which she stated that whether the mountain bike robber injured other victims was disputed. At oral argument, on rebuttal, counsel for plaintiff said that the mountain bike robber struck another victim with a sack and indicated we would find a statement to that effect in a police report in the record. Plaintiff does not identify the police report that might support her statement, and we do not find evidence in the summary judgment record to support it. Whether the victims of the mountain bike robber were or were not injured does not affect our analysis in any event. Even assuming that plaintiff was injured and the victims of the mountain bike robber were not, we agree with plaintiff that there are still sufficient similarities between her incident and the incidents involving the mountain bike robber to send the question to the jury.

that befell plaintiff was caused by the Mountain Bike robber."

Whether the alleged assailant was armed or committed robbery or caused injury are distinctions a jury could find sufficient to rule out the mountain bike robber as the cause of plaintiff's alleged injury. Nonetheless, questions about the identity of plaintiff's alleged assailant and his relationship to the mountain bike robber remain, and we do not believe that the facts presented are so definitive as to eliminate any triable issue of fact as to whether the individual striking plaintiff was the person commonly identified as the mountain bike robber. In short, this is not the "extreme case" in which there is no issue of fact to be resolved by a jury. *See Donaca v. Curry Co.*, 303 Or 30, 38, 734 P2d 1339 (1987). We conclude that the trial court erred in granting the city's motion for summary judgment.

Reversed and remanded.